COMMONWEALTH *vs.* FREDERICK HINMAN KNOWLTON, JR.

Middlesex.    October 15, 1928. — December 26, 1928.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Homicide,* Extreme atrocity or cruelty.  *Evidence,* Competency, Rele-
vancy, Photograph, Presumptions and burden of proof.  *Witness,*
Cross-examination.  *Venue.  Jurisdiction.*

Photographs, duly authenticated, were *held* to have been competent and
properly admitted in evidence at the trial of an indictment charging
murder of a woman, where an issue was, whether the homicide was
committed with extreme atrocity or cruelty within the provisions of
G. L. c. 265, § 1, and it appeared that the photographs showed the
nature and extent of a wound on the right side of the woman's head,
which, by other evidence, was shown at the time she was found shortly
after the murder to have been a large opening on the right side of the
skull from which brain matter was exuding so that that side of the
skull was practically empty.

It was within the discretion of the trial judge, at the trial of the indictment
above described, to permit the defendant to be asked in cross-examina-
tion, "When you read in the newspaper that this girl, with whom you
had been on Thursday night, had been brutally murdered, did you
then suspect the brother?" and a claim of error on the ground that
"The question improperly assumed that the girl had been brutally
murdered" was overruled.

No error is shown in the exclusion, by the judge at the trial of an indict-
ment, of a part of a newspaper containing a "photograph" offered by
the defendant, where it afterwards was offered in evidence by the Com-
monwealth and was admitted without objection by the defendant.

At the trial of the indictment above described, the defendant offered,
as evidence of threats by a person other than the defendant and as
evidence of motive of another to commit the crime in disproof of the
Commonwealth's contentions that the defendant killed the woman,
testimony by a register of probate that, five or six months before the
murder, the woman had interviewed him and had told him "that her
brother was the father of her child and that she wanted process, or
wanted something done to make the brother support the child; that
she had received threatening letters and wanted to know if there was
anything that she could do to stop such letters being sent." There was
no evidence as to the nature of the threats or the identity of the sender
of the letters, nothing to connect any person other than the defendant
with the murder, and nothing tending to connect the letters with any
person, or to show that the murder was committed by the brother of the
deceased.    The evidence was excluded.    *Held,* that the evidence had no
bearing upon any issue involved in the trial and properly was excluded.

The evidence at the trial of the indictment above described was that the body of the deceased was found on a public way in Concord, within the county of Middlesex, and there was no other evidence offered as to where the homicide was committed. A petition by the district attorney under § 57A, added to G. L. c. 277 by St. 1923, c. 340, was allowed before trial. *Held,* that, even apart from the statute, the finding of the body in Middlesex County was sufficient to give the court jurisdiction, and warranted the jury in concluding that the homicide was committed in that county.

Evidence, at the trial of the indictment above described, showing the great and unusual violence of the blow on the head, the condition of the woman's clothing, bruises and evidences of violence on other parts of her body was *held* to warrant a finding that the homicide was committed with extreme cruelty or atrocity, although a part of the evidence, taken alone, showed only that an attempt was made to have sexual intercourse with the woman against her will and by force and such facts alone, if believed, were not the cause of death; it was competent for the jury to find that they contributed to make the homicide one of extreme atrocity or cruelty.

INDICTMENT, found and returned on April 6, 1928, charging the defendant with the murder of Marguerite Isabelle Stewart.

In the Superior Court, the indictment was tried before *Gray,* J. The defendant was found guilty. Material evidence at the trial and exceptions saved and errors assigned by the defendant are stated in the opinion.

The case was argued at the bar in October, 1928, before *Crosby, Pierce, Carroll,* & *Sanderson,* JJ., and afterwards was submitted on briefs to *Rugg,* C.J., & *Wait,* J.

*G. Alpert,* (*M. C. Kelleher* & *J. P. Driscoll* with him,) for the defendant.

*R. T. Bushnell,* District Attorney, (*F. A. Crafts,* Assistant District Attorney, with him,) for the Commonwealth.

CROSBY, J. The prisoner was convicted of the murder, in the first degree, of Marguerite Isabelle Stewart, an unmarried woman. In response to a motion for a bill of particulars filed by the prisoner and allowed by the judge, the district attorney specified that the crime was committed between the hours of 12 o'clock noon and 8 P.M., on March 30, 1928, and averred that the Commonwealth was unable to specify the exact spot where the crime was committed, or to specify or describe the instrument used in the commission

of the crime beyond stating that it was an instrument of sufficient weight and substance to break the skull of the murdered woman.

The verdict must be taken to mean that the jury determined conclusively that the prisoner in fact killed the deceased. The defence does not raise any question to the contrary. In his brief it is stated: "With murder by deliberate premeditation, and with murder in the commission or attempted commission of a crime punishable with death or imprisonment for life, we are not here concerned. The only question is whether the evidence warranted a conviction on the ground of extreme atrocity and cruelty." The question we have to decide is whether upon the evidence the trial judge was warranted in submitting to the jury the issue, whether the murder was committed with extreme atrocity or cruelty. G. L. c. 265, § 1, provides "Murder committed with deliberately premeditated malice aforethought, or with extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable with death or imprisonment for life, is murder in the first degree. Murder which does not appear to be in the first degree is murder in the second degree."

There was evidence that the body of the deceased was found by the side of the highway, in Concord, between 7:30 and 8 o'clock on Friday evening, March 30, 1928; that the body was lying on its left side with the right arm under the head; the knees bent, and the feet towards the road; that the head was diagonally away from the road; that the body was fully dressed with the exception of a hat, which was never found; that the coat was forward on the body and the legs were exposed but were covered with shoes and stockings; that the coat was well up over the head and dress. There was also evidence tending to show that police officers arrived at the place where the body was found at about 7:50 o'clock the same evening and that the body was then slightly warm; that the deceased's "corsets were undone and down around her buttocks and thighs. The left leg of her bloomers was off." There was evidence that there was a "drizzly" rain that night but that her stockings were not very wet.

Dr. Walcott, the medical examiner, testified in part as follows: "The clothing was disarranged when I viewed the body. The dress was pulled up. The bloomers were partly off, the left leg being out of the left leg of the bloomer. The bloomer was hanging on the right leg. The corsets were unfastened and down to the thighs and knees. The coat was wet with water, and blood stains, and splashed with brain substance . . . . The hair was wet with water . . . and blood, matted with blood. There was a large opening on the right side of the skull from which brain matter was exuding, and that side of the skull was practically empty. On undressing the body there were very few marks, no marks of violence except the head. There was a small red discoloration the level of the cricoid cartilage, and made evidently by a scarf which was wound around the neck, and pulled snugly about the throat . . . . About the left wrist there was a reddish discoloration, where the band of the wrist watch had been . . . . About the middle third of the right forearm was a reddish discoloration. Just above the left knee there was a yellowish-brown discoloration, small, irregular in shape; and on the right kneecap there was a yellowish-brown discoloration . . . . Under the right eye, extending from a point at the root of the nose, outward, toward the outward angle of the eye, was an area of ecchymosis, or black and blue discoloration. As I remember it, there were no other marks."

Dr. Magrath, a medical examiner for Suffolk County, testified substantially to the same effect in describing the marks and wounds upon the body of the deceased, and gave it as his opinion that death was caused by the blow on the head; that the heart could not have continued to beat for many minutes after such a blow.

One Rand, a witness called by the Commonwealth, testified that late Friday afternoon, March 30, 1928, he saw a man on Ash Street, in Weston, in a Chrysler automobile similar to that owned by the defendant; that he later identified this man as the defendant, and that in the car with the man he had seen a woman who was crying.

1. The first assignment of error relates to the admission

in evidence of exhibits 3 and 4, which were photographs of the face and head of the deceased, and which showed the size and location of a wound upon the right side of the head. The ground of the objection to this evidence was that the gruesomeness of the photographs could have no legitimate bearing upon any issue, and that their admission would tend to prejudice the jury against the defendant. It is plain that the photographs were competent upon the issue, whether the murder was committed with extreme atrocity or cruelty, as they show the nature and extent of the wound which caused death, and it might have been found that the force exercised to accomplish such a result indicated extreme cruelty. As there was no question respecting the identification of the photographs this exception must be overruled. *Commonwealth* v. *Robertson*, 162 Mass. 90. *Commonwealth* v. *Chance*, 174 Mass. 245, 247. *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 248, 249. *McGrath* v. *Fash*, 244 Mass. 327.

2. The second assignment of error relates to the admission of the following question asked the defendant in cross-examination: "When you read in the newspaper that this girl, with whom you had been on Thursday night, had been brutally murdered, did you then suspect the brother?" The claim of error is that "The question improperly assumed that the girl had been brutally murdered." The cross-examination of a witness is ordinarily within the sound discretion of the presiding judge. There was no error in the admission of the question. *Commonwealth* v. *Corcoran*, 252 Mass. 465. *Commonwealth* v. *Barber*, 261 Mass. 281.

3. The third assignment of error relates to the exclusion of part of a newspaper containing a "photograph," offered by the defendant's counsel. It was afterwards offered by the Commonwealth and admitted without objection by the defendant. No error is shown under this assignment.

4. The fourth assignment of error relates to the exclusion of the following question asked by counsel for the defendant in the direct examination of a witness called by him. "What did she (the deceased) state to you her business was with you as registrar of probate?" Counsel for the defendant offered to prove that the witness would testify as follows: "This

young woman that I have identified came to my office and told me that her brother was the father of her child and that she wanted process, or wanted something done to make the brother support the child; that she had received threatening letters and wanted to know if there was anything that she could do to stop such letters being sent." The error assigned is that "The statement of the deceased girl to the witness, as set forth in the offer of proof should have been admitted as evidence of threats by a person other than the defendant and as evidence of motive of another to commit the crime in disproof of the government's contentions that the defendant killed the girl." The record shows that the statements were made in September or October, 1927; the murder was committed March 30, 1928. There is nothing to show the nature of the threats or that they were of bodily harm, and nothing to indicate the identity of the sender of the letters. There was no evidence to connect any person other than the defendant with the murder committed several months after the interview between the witness and the deceased. There was no evidence or offer of proof tending to connect the letters with any person. There was no evidence, direct or circumstantial, tending to show that the murder was committed by the brother of the deceased. It is plain that the proffered evidence was of no probative value. It had no bearing upon any issue involved in the trial and was properly excluded.

5. The fifth assignment of error is based upon the following grounds: "(a) The evidence was insufficient to warrant a conviction of murder either in the first or second degree. (b) The evidence was insufficient to warrant the jury in finding that the homicide was committed in Middlesex County or in the Commonwealth of Massachusetts. (c) The court had no jurisdiction either at common law or under St. 1923, c. 340, to try the defendant on this indictment." It is manifest from an examination of the evidence that it was sufficient to justify the jury in finding the defendant guilty in the first degree. Upon the question of jurisdiction there was evidence that the body of the deceased was found on the road, in Concord, within the county of Middlesex,

and there was no other evidence offered as to where the homicide was committed. The finding of the body in Middlesex County was sufficient to give the court jurisdiction, and warranted the jury in concluding that the homicide was committed in that county. *Commonwealth* v. *Costley*, 118 Mass. 1, 26. The record shows that the district attorney petitioned the court, before proceeding with the trial, for leave to proceed under § 57A added to G. L. c. 277 by St. 1923, c. 340, with the trial in Middlesex County, stating that he was in doubt from the state of the evidence in his possession as to whether or not the crime was committed within the county or the territorial jurisdiction of the court. This petition was allowed. Apart from said § 57A, it is plain that if the body was found in Middlesex County the jury could have found that the crime was committed in that county. That question is settled by the decision in *Commonwealth* v. *Costley, supra.*

6. The sixth assignment of error, raised by exception 60, is that the evidence did not warrant the submission to the jury of the issue, whether the murder was committed with extreme atrocity or cruelty. To authorize the presiding judge to submit this question to the jury, the evidence must be of such a character as to show that the crime was committed under circumstances indicating something more than ordinary atrocity or cruelty, and manifesting a degree of atrocity or cruelty which must be considered as aggravated and extreme. The nature of a question of this kind is such that it must largely be left to the determination of the jury. Of course, the evidence must be sufficient to justify the judge in submitting the case to the jury. In the case at bar it could have been found that the deceased had been seen weeping while in the company of the defendant; that when her body was found, under her right eye was a black and blue mark extending from the root of the nose to the outside angle of the eye and caused by a separate blow from that which crushed her skull. The position of her corsets and the condition of her underclothing, and the discoloration upon both knees furnished evidence that an attempt was made to have sexual intercourse with her against her will

and by force, all of which, when taken in connection with the defendant's own testimony that he knew the deceased was five months advanced in pregnancy, and the various discolorations on the different parts of her arms and body, was evidence that the crime was committed with extreme cruelty. Although such facts, if believed, were not the cause of death, yet it was competent for the jury to find that they contributed to make the homicide one of extreme atrocity or cruelty. It was said by Dewey, J., in *Commonwealth* v. *Desmarteau,* 16 Gray, 1, at page 11: "It is upon the present hearing objected, that many of the facts stated as subjects for the consideration of the jury, as bearing upon this point, were not stated in the indictment. We are of opinion that they need not be. Such facts may not have been the cause of death, and yet they may materially have contributed to make the killing one of atrocity and extreme cruelty." In addition to the foregoing, the evidence of the great and unusual violence of the blow on the head, as shown by the testimony of the physicians and by the photographs, which crushed the skull and made a large opening allowing the brain substance to be exuded and that side of the skull practically empty, afforded a basis for finding the defendant guilty of murder in the first degree on the ground of extreme atrocity or cruelty. *Commonwealth* v. *Desmarteau, supra. Commonwealth* v. *Devlin,* 126 Mass. 253. *Commonwealth* v. *Gilbert,* 165 Mass. 45. *Commonwealth* v. *Feci,* 235 Mass. 562, 571. *Commonwealth* v. *Devereaux,* 256 Mass. 387, 394. *Commonwealth* v. *Taylor,* 263 Mass. 356.

A careful examination of the entire evidence fails to disclose any error of law. It results that the entry must be

*Judgment on the verdict.*