STATE OF NORTH CAROLINA v. DONALD OWEN BATDORF

No. 34

(Filed 11 November 1977)

**1. Criminal Law § 14— jurisdiction challenged—burden of proof on State**

When jurisdiction is challenged, the State must carry the burden and show beyond a reasonable doubt that N.C. has jurisdiction to try the accused, and former cases of the N.C. Supreme Court holding that a challenge to the jurisdiction is an affirmative defense with the burden of persuasion on the accused are no longer authoritative.

**2. Criminal Law § 14— jurisdiction challenged—crime committed in N.C.—sufficiency of evidence**

Evidence in a first degree murder prosecution made out a prima facie showing of jurisdiction sufficient to carry the question to the jury and permit the jury to infer that the killing took place in N.C. where such evidence tended to show that a valid bill of indictment, regular on its face, was returned against defendant by the Sampson County Grand Jury; the murder weapon was concealed by defendant in N.C. and was recovered in N.C.; the victim's body was found in N.C.; and materials with which the victim's body was trussed and weighted came from the N.C. home of defendant's girl friend.

**3. Criminal Law § 15— venue—proof beyond reasonable doubt not required—burden of proof on State**

Since G.S. 15A-135 is silent concerning the burden of proof with respect to venue, the common law controls and the burden of proof is upon the State to show that the offense occurred in the county named in the bill of indictment, but venue need not be shown beyond a reasonable doubt, since it does not affect the question of defendant's guilt or the power of the court to try him.

**4. Criminal Law § 15— murder—venue question—body found in county in which crime was allegedly committed**

The State's evidence in a first degree murder case was sufficient to support the conclusion that the offense occurred in Sampson County and to fix

venue in Sampson County where the bill of indictment alleged that defendant committed the offense in Sampson County, the body of deceased was discovered in Sampson County, and defendant's rebuttal evidence pointed to no particular place beyond the boundaries of Sampson County as the scene of the crime.

5. **Criminal Law § 14— jurisdiction challenged—instructions favorable to defendant**

Where the trial court in a first degree murder case instructed the jury at length that unless the prosecution had satisfied it beyond a reasonable doubt that the killing occurred in N.C., it should return a verdict of not guilty, but a correct instruction would have required the jury, if not so satisfied, to return a special verdict indicating lack of jurisdiction because a court with no jurisdiction could neither acquit nor convict, nevertheless the trial court's instruction was favorable to defendant and adequately guaranteed him the right to have the facts determinative of jurisdiction found beyond a reasonable doubt by a jury of his peers.

6. **Criminal Law § 14— jurisdiction challenged—place where body was found—instructions proper**

In a first degree murder prosecution defendant's contention that the trial court failed to instruct the jury that the inference arising from the discovery of the body in N.C. was rebuttable and failed to require the jury to consider the evidence of both the State and defendant in its determination of where the killing occurred is without merit where the court charged the jury that "if you are satisfied from the evidence beyond a reasonable doubt that the body was found in N.C., that is some evidence from which you may conclude that the killing occurred in N.C."

DEFENDANT appeals from judgment of *Webb, J.,* February 1977 Session, SAMPSON Superior Court.

A true bill of indictment, returned by the grand jury of Sampson County, charged that defendant feloniously, willfully and of his malice aforethought, did kill and murder Leroy E. West in Sampson County, North Carolina, on 17 January 1976, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

Prior to trial defendant moved to dismiss the charge for lack of jurisdiction alleging that the crime charged, if committed at all, which was denied, was committed either in the State of Ohio or some other state "adjacent or close to Ohio" and not within the State of North Carolina. Defendant also asserted that Sampson County was not the proper venue.

Answering defendant's motion to dismiss, the State alleged: (1) that the body of Leroy West, clothed and wrapped in two

Army blankets, roped, chained and weighted with a cement block, was found floating in a water-filled clay hole near Roseboro, North Carolina, in Sampson County on 7 May 1976; (2) that an autopsy revealed the cause of death to be a bullet wound in the back of the head and that a .22 caliber bullet was removed from the victim's head; (3) that defendant, while being held on other charges in Nassau County, New York, confessed to killing Leroy West and placing the body in a pond in Sampson County, North Carolina; (4) that defendant told Nassau County officers and officers of the North Carolina State Bureau of Investigation that he first came in contact with Leroy West at a truck stop in Conneaut, Ohio, and rode with the truck driver for some distance, sleeping part of the time, and that later the truck stopped and he shot and killed Leroy West; that defendant then drove the truck to Fayetteville, North Carolina, where defendant's girl friend lived; that he wrapped the body of Leroy West in blankets, rope, chain, weighted it with a cement block, and then threw it into a pond near Roseboro in Sampson County; (5) that defendant said he did not know where or in what state he shot Leroy West; (6) that several prosecutors in the State of Ohio, including the county in which Conneaut is located, have been contacted and all have declined to assume jurisdiction of the case on the grounds that they cannot establish venue; (7) that the federal courts have no jurisdiction of the homicide charge in this case; (8) that defendant has not been placed in jeopardy for this crime in North Carolina or any other state and is likely to escape punishment altogether for a murder to which he has confessed unless he is prosecuted in this jurisdiction; and (9) that the discovery of the body of Leroy West in Sampson County and defendant's admission that he killed West and wrapped the body in blankets, ropes, chains, and weighted it with a cement block, and threw it in the Sampson County pond where it was discovered, sufficiently establishes jurisdiction and venue in Sampson County.

Following a hearing Judge Rouse found that the State of North Carolina had jurisdiction to try defendant for this offense and that Sampson County was the proper venue for the trial of the case. The motion to dismiss was thereupon denied and defendant excepted.

The State's evidence tends to show that Leroy E. West was 5 feet 7 inches tall and weighed 125 pounds. He was employed in

March 1975 by John R. Hafner who was in the trucking business in Strasburg, Ohio. West was not a regular truck driver but had certain supervisory duties such as checking drivers in, writing checks, going after disabled vehicles and making an occasional delivery of a load in the immediate area. On Friday morning, 16 January 1976, Mr. Hafner instructed West to drive a tractor-trailer from the garage in Strasburg to Conneaut, Ohio, a distance of one hundred miles, and deliver the load of scrap plastics to Allied-Resin Company in Conneaut. West was told that after making the delivery he could take time off until early Monday morning. West was a dependable, trustworthy employee.

In January 1976 defendant was twenty-three years of age, 6 feet 2 inches tall and weighed 215 pounds. He had been in the military service for about two years stationed at Fort Bragg, North Carolina. He obtained a leave of absence from the 6th to the 20th of January 1976 and went to his civilian home in Conneaut, Ohio, to visit his parents. Shortly before his leave expired he talked to different truck drivers at the truck stops around Conneaut in an effort to locate a ride back to Fort Bragg. In that fashion he met Leroy West unloading his truck at the Allied-Resin plant and West agreed to give him a ride. Defendant obtained his traveling bag and secretly took his father's .22 caliber High Standard target pistol, and the two men left in the tractor-trailer rig driven by West.

On Sunday, 18 January 1976, defendant appeared at the home of his girl friend Patricia Danak in Fayetteville, North Carolina, driving the tractor-trailer and told her he had bought it. The tractor was dirty and had a bad odor about it. Defendant took the mattress out of the tractor and washed it. His girl friend then washed the mattress with two bottles of pine oil and washed the whole inside of the cab. Defendant bought a can of silver paint and used it to paint the stacks and to paint over the numbers. He then sprayed the name "P & D Motors, Inc." on the doors.

In February 1976 defendant volunteered to drive his girl friend to New York to visit her sister. While there he was involved in a minor accident as a result of which the tractor-trailer was impounded. The New York officers ascertained that the truck had been reported stolen, obtained a warrant charging defendant with felony possession of stolen property, and during interrogation defendant gave a statement in which he confessed to killing

the truck driver and depositing the body, wrapped in blankets and weighted down, in a pond near Fayetteville, North Carolina. He confessed that the murder weapon was located under a mattress at his girl friend's house in Fayetteville and drew a map indicating the location of the body. The New York authorities then contacted the Cumberland County Sheriff's Department and a warrant was obtained to search the girl friend's residence where the weapon was located and seized. The body was found in the pond in Sampson County and identified as the body of Leroy E. West, the missing truck driver. Thereafter a warrant was issued charging defendant with the first degree murder of West, and on 22 June 1976 defendant gave a statement to SBI Agent Marshal Evans and Sampson County Deputy Sheriff Landis Lee. A subsequent statement was taken from defendant on 30 September 1976 by the same parties.

In those statements defendant said that he killed Leroy E. West after being homosexually assaulted; that the incident occurred in southeast Ohio some five or six hours after defendant and his victim left their starting point in Conneaut, Ohio; that he drove the truck to Fayetteville, North Carolina, with the body in it, arriving on Sunday afternoon; that late at night on either Monday or Tuesday, January 19 or 20, 1976, in Fayetteville, North Carolina, he tied up the body in two blankets that were in the trailer, using some green nylon riser cord that he had at his girl friend's house; that he obtained a cement block from the backyard there, put it in the trailer with the body, drove to the water hole or pond near Roseboro in Sampson County, attached the chains and cement block to the body and threw it into the pond. Defendant said he had been to the pond a couple of times before Christmas and knew its location. He told the officers how he and his girl friend cleaned out the cab of the truck and washed the mattress and stated that the only blood he saw was on the mattress in the sleeper. He said he carried the victim's boots, coat and the red cover to the mattress to a garbage dump in Fayetteville.

There were various discrepancies in defendant's statements. He told FBI Agent Caverly that he bought the tractor-trailer for $3200 from a man named James Little but never mentioned that he had been sexually attacked or had killed anyone. He told Kenny Meyer with the Nassau County Police that he bought the

tractor-trailer from James Little for $28,000, withheld $4,000 pending delivery of title, and borrowed the purchase money from lenders who did not want their identity known. He also told Officer Meyer that he went home late at night after killing Leroy West with the body in the truck. He told SBI Agent Evans that Leroy West drove defendant to his father's home in the tractor-trailer, a distance of ten miles, to get defendant's suitcase and the .22 caliber pistol. He denied to Agent Evans that he told Officer Meyer he drove the truck to his parent's home with the body in it, asserting that he drove it alone. He told Agent Evans he killed Leroy West in southeastern Ohio near the Pennsylvania state line and then asserted he did not know where he was when he started driving the truck. On direct examination of these officers the State elicited testimony concerning all of defendant's statements.

The State's evidence further tends to show that a .22 caliber bullet taken from the brain of the victim was fired from the .22 caliber High Standard target pistol found under the mattress at the home of defendant's girl friend, and defendant's father identified the weapon as belonging to him.

Defendant offered in evidence a map of the eastern United States and elicited, by cross-examination of State's witnesses, testimony to the effect that it is about seven hundred miles from Conneaut, Ohio, to Clinton, Sampson County, North Carolina, or about fourteen hours driving time in a tractor-trailer moving at 50 miles an hour; that six hours out of Conneaut, Ohio, the tractor-trailer would have covered only three hundred miles and would have reached a point close to Washington, D.C., which is at least two hundred miles from the North Carolina border.

Defendant then testified as a witness in his own behalf, repeating his previous statements to the officers that he hitchhiked a ride with Leroy West in Conneaut, Ohio, was sexually assaulted by him some six hours after they left Conneaut, and while the two struggled over the pistol it accidentally discharged killing West; that he did not know where or in what state the killing occurred; that he drove the tractor-trailer to Fayetteville with the body in it, wrapped it in blankets as heretofore described, weighted it and threw it in a pond in Sampson County. He testified about hiding the gun at his girl friend's home and about

taking her to New York in the tractor-trailer to see her sister, narrating the details concerning the accident, the impoundment of the rig and his later interrogation and confession to the New York officers. He said he planned to find a truck terminal belonging to the owner of the rig so he could leave it there and take the bus back to Fayetteville, North Carolina.

On cross-examination defendant said he was positive that Leroy West was not killed in North Carolina and added, "If I was on trial in Ohio I would be telling them it didn't happen up there and if they had a trial up there that's what I would have told them, yes, sir." He asserted on the witness stand that West wasn't killed in Ohio, North Carolina, Virginia, West Virginia, Kentucky, South Carolina, Texas, Tennessee, Maryland or Pennsylvania. Then he said: ". . . It could have happened in southeastern Ohio or it could have happened in Pennsylvania, Kentucky, Tennessee or West Virginia. . . . I do not know where it happened. One thing I am sure of, with the time factor involved, it couldn't have happened here, in North Carolina."

The court submitted first degree murder, second degree murder, voluntary manslaughter, involuntary manslaughter or not guilty as permissible verdicts. The jury returned a verdict of guilty of murder in the first degree and defendant was sentenced to life imprisonment. He appealed to the Supreme Court assigning errors discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by J. Michael Carpenter, Associate Attorney, for the State of North Carolina.*

*David J. Turlington, Jr., attorney for defendant appellant.*

HUSKINS, Justice.

Defendant contends there was insufficient evidence to show (1) that the murder with which he is charged was committed in North Carolina so as to confer jurisdiction on the courts of this State and (2) that the crime was committed in Sampson County so as to fix venue in that county. Denial of his motions challenging both jurisdiction and venue constitutes his first assignment of error.

[1] This Court has traditionally regarded a challenge to jurisdiction as an affirmative defense with the burden of persuasion on

the defendant. *State v. Golden*, 203 N.C. 440, 166 S.E. 311 (1932); *State v. Davis*, 203 N.C. 13, 164 S.E. 737, *cert. denied* 287 U.S. 649 (1932); *State v. Long*, 143 N.C. 670, 57 S.E. 349 (1907); *State v. Barrington*, 141 N.C. 820, 53 S.E. 663 (1906); *State v. Blackley*, 138 N.C. 620, 50 S.E. 310 (1905).

The majority of states, however, require the state to prove beyond a reasonable doubt that its courts have jurisdiction in a criminal case. *See* Annot., 67 A.L.R. 3d 988, 1004 (1975); *State v. Wardenburg*, 261 Iowa 1395, 1401-02, 158 N.W. 2d 147, 151 (1968), a case dealing with venue which necessarily entails a resolution of jurisdiction, and cases therein cited. For reasons which follow, we think North Carolina should adopt the majority rule.

We have recognized from earliest times that the criminal jurisdiction of our courts is territorially restricted. *State v. Brown*, 2 N.C. 100 (1794); *State v. Knight*, 1 N.C. 143 (1799); *State v. Cutshall*, 110 N.C. 538, 15 S.E. 261 (1892); *State v. Jones*, 227 N.C. 94, 40 S.E. 2d 700 (1946). A defendant's contention that this State lacks jurisdiction may be an affirmative defense in that it presents, in the words of Justice Barnhill in *State v. Davis*, 214 N.C. 787, 793, 1 S.E. 2d 104, 108 (1939), a matter "beyond the essentials of the legal definition of the offense itself." Jurisdictional issues, however, relate to the authority of a tribunal to adjudicate the questions it is called upon to decide. When jurisdiction is challenged, the defendant is contesting the very power of this State to try him. We are of the view that a question as basic as jurisdiction is not an "independent, distinct, substantive matter of exemption, immunity or defense" (*State v. Davis, supra*) and ought not to be regarded as an affirmative defense on which the defendant must bear the burden of proof. Rather, jurisdiction is a matter which, *when contested*, should be proven by the prosecution as a prerequisite to the authority of the court to enter judgment.

Moreover, problems akin to double jeopardy are involved. The Full Faith and Credit Clause, U.S. Const. art. IV, § 1, does not require one state to accept the judicial determinations of a sister state as to which possesses jurisdiction in a given case. *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 21 L.Ed. 897 (1873). *See also State v. Baldwin*, 305 A. 2d 555 (Me. 1973); *Frances Hosiery Mills, Inc. v. Burlington Industries, Inc.*, 285 N.C. 344, 204 S.E. 2d 834 (1974). If different states could successively try an ac-

cused for equivalent criminal offenses arising out of the same conduct, the spirit, if not the letter, of the provisions against double jeopardy would be violated. *Fox v. Ohio*, 46 U.S. (5 How.) 410, 435, 12 L.Ed. 213, 224 (1847) (dissenting opinion); *State v. Brown, supra. See Green v. United States*, 355 U.S. 184, 187-88, 2 L.Ed. 2d 199, 204, 78 S.Ct. 221, 223 (1957); *State v. Knight, supra.* It seems appropriate, therefore, that when jurisdiction is challenged the State should bear the burden of showing the authority of its trial courts to proceed to judgment. By placing upon the State the burden of proving beyond a reasonable doubt that the crime with which an accused is charged was committed in North Carolina, we minimize the possibility that a defendant will be tried here for a crime actually committed elsewhere. By so doing we enhance the prospect that sister states will give full faith and credit to our decisions respecting criminal jurisdiction even though such deference is not constitutionally required. *See State v. Baldwin*, supra. This is most desirable. For these reasons we hold that when jurisdiction is challenged, as here, the State must carry the burden and show beyond a reasonable doubt that North Carolina has jurisdiction to try the accused. Our former cases holding that a challenge to the jurisdiction is an affirmative defense with the burden of persuasion on the accused are no longer authoritative.

In the present case Judge Webb properly placed the burden of proof and instructed the jury that unless the State had satisfied it beyond a reasonable doubt that the killing of Leroy West occurred in North Carolina, a verdict of not guilty should be returned. While the court should have instructed the jury, if not so satisfied, to return a special verdict indicating lack of jurisdiction, the instruction given was favorable to defendant and affords him no just grounds for complaint.

Defendant argues, however, that the State's evidence on the question of jurisdiction was insufficient to carry the case to the jury. Therefore, he contends the court erred in denying his pretrial motion for dismissal and his motion for nonsuit at the close of all the evidence. For reasons which follow we hold these motions were properly denied.

[2] A valid bill of indictment, regular on its face, was returned against defendant by the Sampson County Grand Jury. The murder weapon was concealed by defendant in North Carolina and was recovered in North Carolina. The victim's body was

found in North Carolina. Materials with which the victim's body was trussed and weighted came from the North Carolina home of defendant's girl friend. These undisputed facts make out a prima facie showing of jurisdiction sufficient to carry the question to the jury and permit the jury to infer that the killing took place in North Carolina. *See, e.g., People v. Peete*, 54 Cal. App. 333, 202 P. 51 (1921); *Breeding v. State*, 220 Md. 193, 151 A. 2d 743 (1959); *Commonwealth v. Knowlton*, 265 Mass. 382, 163 N.E. 251 (1928); *Commonwealth v. Costley*, 118 Mass. 1 (1875); *State v. Fabian*, 263 So. 2d 773 (Miss. 1972).

Even if *In re Winship*, 397 U.S. 358, 25 L.Ed. 2d 368, 90 S.Ct. 1068 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed 2d 508, 95 S.Ct. 1881 (1975), include within their uncertain ambit the requirement that a state's jurisdiction to try a criminal defendant be proved beyond a reasonable doubt, permitting the jury to infer from the prima facie showing that the killing took place within North Carolina does not offend the Due Process Clause—the "rational connection" between the evidence offered and the inference which the jury was permitted to draw is sufficiently strong to meet due process standards. *See Mullaney v. Wilbur*, 421 U.S. at 702, n. 31; *Barnes v. United States*, 412 U.S. 837, 845-46, nn. 9-11, 37 L.Ed. 2d 380, 93 S.Ct. 2357 (1973), and cases there cited. *See also United States v. Jones*, 508 F. 2d 1271 (4th Cir. 1975), *cert. denied* 421 U.S. 950.

Defendant's contention that the evidence was insufficient to fix venue in Sampson County is likewise without merit. Former G.S. 15-134 (repealed effective 1 July 1975) provided that all offenses were deemed to have been committed in the county alleged in the indictment unless defendant denied same by plea in abatement and indicated by affidavit the proper county for trial of the charges against him. The statute did not state which party had the burden of proof if such plea were filed. "At common law, the burden of proof was upon the State to prove that the offense occurred in the county named in the bill of indictment. *State v. Oliver*, 186 N.C. 329, 119 S.E. 370." *State v. Overman*, 269 N.C. 453, 153 S.E. 2d 44 (1967). The purpose of former G.S. 15-134 was to forestall the possibility that a criminal offender would escape punishment merely because of uncertainty as to the county in which the crime was committed. *State v. Mitchell*, 83 N.C. 674 (1880); *State v. Overman, supra.*

[3]   Former G.S. 15-134 has been replaced by G.S. 15A-135 which deletes the requirement that a defendant contesting venue execute an affidavit setting forth the proper venue and replaces the plea in abatement by "a motion to dismiss" for improper venue under G.S. 15A-952. The new statute, like the old, is silent concerning the burden of proof. Hence, the common law controls and the burden of proof is upon the State to show that the offense occurred in the county named in the bill of indictment. *State v. Miller*, 288 N.C. 582, 220 S.E. 2d 326 (1975). Venue need not be shown beyond a reasonable doubt since it does not affect the question of a defendant's guilt or the power of the court to try him. Proof of venue by a preponderance of the evidence is sufficient. This accords with the rule in many states. See Annot., 67 A.L.R. 3d 988 at 1000 (1975), and cases there cited from sixteen states and from seven federal circuit courts.

[4]   Here, the bill of indictment alleges that defendant committed the offense in Sampson County. The body of Leroy West was discovered in Sampson County. That evidence makes a prima facie showing that Sampson County is the proper venue. *See United States v. Rees*, 193 F. Supp. 849 (D.C. Md. 1961); *People v. Peete*, supra; *Breeding v. State, supra; Commonwealth v. Knowlton*, supra; *Commonwealth v. Costley*, *supra*; *People v. Sparks*, 53 Mich. App. 452, 220 N.W. 2d 153 (1974); *Sanders v. State*, 286 So. 2d 825 (Miss. 1973); *State v. Fabian, supra; Hawkins v. State*, 60 Neb. 380, 83 N.W. 198 (1900); *State v. Coolidge*, 109 N.H. 403, 260 A. 2d 547 (1969), *reversed on other grounds* 403 U.S. 443 (1971); *McGlocklin v. State*, 516 P. 2d 1357 (Okla. Crim. App. 1973). Upon such prima facie showing defendant must go forward with evidence sufficient to rebut the inferences arising therefrom. He remains silent at his own risk. Since defendant's rebuttal evidence points to no particular place beyond the boundaries of Sampson County as the scene of the crime, we hold that the State's evidence was sufficient to support the conclusion that the offense occurred in Sampson County and to fix venue in Sampson County. Defendant's motion to dismiss for improper venue was properly denied. His first assignment of error is overruled.

[5]   Defendant's remaining assignments concern alleged inadequacies in the charge to the jury. He contends Judge Webb failed to instruct that in order to convict defendant the jury must be

satisfied beyond a reasonable doubt that the killing occurred in North Carolina and that the burden was on the prosecution to prove that fact. This contention is puzzling. The court instructed the jury at length that unless the prosecution had satisfied it beyond a reasonable doubt that the killing occurred in North Carolina, it should return a verdict of not guilty. This charge was reiterated near the end of the judge's instructions. As noted above, a correct instruction would have required the jury, if not so satisfied, to return a special verdict indicating lack of jurisdiction *because a court with no jurisdiction could neither acquit nor convict.* Even so, Judge Webb's instruction was favorable to defendant and adequately guaranteed him the right to have the facts determinative of jurisdiction found beyond a reasonable doubt by a jury of his peers.

[6] Finally, defendant assigns as error the court's charge with respect to permissible inferences arising from the discovery of the corpse in Sampson County. Defendant argues that Judge Webb failed to instruct the jury that the inference arising from the discovery of the body in North Carolina is rebuttable and failed to require the jury to consider the evidence of both the State and defendant in its determination of where the killing occurred.

The court charged the jury as follows, the challenged portion being in parentheses:

> "Now, (I charge you ladies and gentlemen, if you are satisfied from the evidence beyond a reasonable doubt that the body was found in North Carolina, that is some evidence from which you may conclude that the killing occurred in North Carolina).

> However, you are not compelled to do so. That is evidence which you will take into account along with all other evidence in determining whether you are satisfied beyond a reasonable doubt that this killing occurred in North Carolina."

We hold this instruction was entirely proper. The assignment of error based thereon is overruled.

For the reasons given, the verdict and judgment must be upheld.

No error.