ELMORE, Judge.
 

 *61
 
 Defendant Jeffrey Keith Hobson appeals from judgment entered upon a jury verdict finding him guilty of misdemeanor stalking. On appeal, defendant raises five assignments of error related to the trial court's subject-matter jurisdiction; its admission of certain evidence, including civil domestic violence protective orders, portions of defendant's ex-girlfriend's testimony, and various photographs; and its denial of his motion to dismiss.
 

 Although the trial court may have abused its discretion in admitting into evidence approximately twenty-eight photographs of firearms,
 
 *62
 
 ammunition, and surveillance equipment found throughout defendant's home, we nevertheless conclude that defendant received a fair trial, free from prejudicial error.
 

 Background
 

 The evidence at trial tended to show that defendant and the victim, Lorrie, were in a dating relationship for approximately four to five months beginning in late 2009. The relationship was not serious or exclusive, and it ended when defendant moved from Wilmington to Greensboro in early 2010.
 

 In October 2010, Lorrie began working at Gold's Gym in Wilmington. When defendant moved back to Wilmington in early 2011, he began making persistent and unwelcome attempts to reconnect with Lorrie, which included repeatedly coming to her workplace and staring at her, calling and texting her, leaving a note on her vehicle, and sending derogatory letters about Lorrie to her father and boyfriend. When Lorrie's ex-husband asked defendant to leave her alone, defendant indicated that "he would make [her] pay and he would not leave [her] alone." Defendant was eventually banned from and escorted out of Gold's Gym by law enforcement.
 

 In February 2012, Lorrie filed a complaint for and obtained a civil domestic violence protective order (DVPO) against defendant pursuant to N.C. Gen. Stat. § 50B. The DVPO provided that defendant not harass or interfere with Lorrie or her children, that he stay away from Lorrie's residence and workplace, and that he surrender all firearms in his possession to law enforcement. In February 2013, Lorrie sought and was granted a renewal of the DVPO for an additional twelve months based on her continued fear of defendant as well as defendant's conduct in approaching Lorrie and her children at a Halloween outing in 2012, while the initial DVPO was still in effect, to ask "if [she] was still mad at him." Defendant was present at both the initial hearing in 2012 and the renewal hearing in 2013, and redacted versions of the DVPOs as well as the filings related thereto were admitted into evidence at trial. Lorrie did not seek an additional renewal of the DVPO, which expired in February 2014.
 

 In October 2014, a deputy with the New Hanover County Sheriff's Office responded to a home "in reference to somebody stating that they had received a letter ... in the mail that appeared to be a flyer for prostitution." The flyer, which had been mailed to countless residents of New Hanover County, stated that Lorrie was a prostitute with sexually
 
 *63
 
 transmitted diseases, and it included her photograph, home address, cell phone number, work address, and work number. Lorrie told law enforcement that she suspected defendant was responsible for the flyers.
 
 *400
 
 Defendant's ex-girlfriend, Holly, testified that she began a dating relationship with defendant in 2010, and he moved into her Wilmington home in May 2011. Holly was aware of defendant's attempts to reconnect with Lorrie. According to Holly, defendant wanted to find out why Lorrie had stopped seeing him, he was angry that Lorrie would not accept his calls, and he expressed a hatred for Lorrie and a desire to make her miserable; defendant "wanted revenge" and "he said [Lorrie] would deserve whatever she got." Sometime after Lorrie obtained the DVPO against defendant, defendant showed Holly a copy of the flyer concerning Lorrie, told Holly that he intended to mail the flyers, and asked Holly for the addresses of people in her neighborhood. Defendant also told Holly "not to say anything and to forget that [she] ever saw it," which Holly stated she interpreted as a threat.
 

 Holly further testified that in January 2013, defendant fractured her nose during an argument about defendant's inappropriate communications with other women. Holly pressed assault charges against defendant, but later requested that the charges be dismissed. Holly explained that she was "afraid that if [she] continued with the charges that [she] would be punished somehow," that defendant was embarrassed and angry about being arrested for assault, and that defendant told her "he would never be arrested again" and "he would not be taken alive." Holly thereafter discovered a stack of the flyers concerning Lorrie among defendant's belongings, and she took one as "[she] was afraid that the same thing would have been done to [her], and [she] wanted to have proof of what [defendant] was capable of." Holly texted Lorrie about the assault and warned Lorrie to be careful, but she did not mention the flyers. Holly did not submit her copy of the flyer to law enforcement until October 2014, after the others had been mailed.
 

 In December 2014, law enforcement officers executed a search warrant at defendant's residence. Firearms, ammunition, and surveillance equipment were located throughout the home, and approximately twenty-eight photographs of those items were admitted into evidence at trial. No white envelopes, American flag stamps, or images or other documents depicting Lorrie as a prostitute were found in the home.
 

 At the conclusion of the State's evidence, defendant moved to dismiss the charge on the basis that "the State ha[d] failed on elements of the crime." The trial court denied the motion. Defendant did not present
 
 *64
 
 any evidence on his behalf but renewed his motion to dismiss, which the trial court again denied. The trial court then charged the jury as follows:
 

 If you find from the evidence beyond a reasonable doubt that on or about the alleged dates the defendant willfully on more than one occasion harassed or engaged in a course of conduct directed at the victim without legal purpose, and that the defendant at that time knew or should have known that the harassment or course of conduct would cause a reasonable person to fear for that person's safety or the safety of that person's immediate family, or would cause a reasonable person to suffer substantial distress by placing that person in fear of death or bodily injury or continued harassment, it would be your duty to return a verdict of guilty.
 

 If you do not so find, or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
 

 Following the guilty verdict, the trial court sentenced defendant to 75 days' imprisonment, suspended on the condition that he serve 60 months' supervised probation. The trial court also ordered that defendant serve 18 days in the New Hanover County jail and pay $195.00 in costs as well as a $2,000.00 fine. Defendant appeals.
 

 Discussion
 

 On appeal, defendant contends the trial court (I) lacked subject-matter jurisdiction over the misdemeanor charge of stalking; (II) abused its discretion in admitting Lorrie's DVPOs against defendant into evidence; (III) erred in failing to exclude from evidence certain portions of Holly's testimony; (IV) abused its discretion in admitting into evidence numerous photographs of firearms, ammunition, and surveillance equipment located throughout defendant's home; and (V)
 

 *401
 
 erred in denying defendant's motion to dismiss the charge for insufficiency of the evidence.
 

 I. Subject-Matter Jurisdiction
 

 As an initial matter, defendant asserts that the trial court lacked subject-matter jurisdiction over the misdemeanor charge of stalking "where the charge was not initiated by a grand jury presentment prior to indictment."
 

 The State is required to prove subject-matter jurisdiction in the trial court beyond a reasonable doubt.
 

 *65
 

 State v. Batdorf
 
 ,
 
 293 N.C. 486
 
 , 494,
 
 238 S.E.2d 497
 
 , 502-03 (1977). When the record on appeal affirmatively shows a lack of subject-matter jurisdiction in the trial court, this Court will arrest judgment or vacate any order entered without authority.
 
 State v. Petersilie
 
 ,
 
 334 N.C. 169
 
 , 175,
 
 432 S.E.2d 832
 
 , 836 (1993) (citation omitted). "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed
 
 de novo
 
 on appeal."
 
 McKoy v. McKoy
 
 ,
 
 202 N.C. App. 509
 
 , 511,
 
 689 S.E.2d 590
 
 , 592 (2010) (citation omitted).
 

 In the instant case, a grand jury indicted defendant for the offense of stalking pursuant to
 
 N.C. Gen. Stat. § 14-277
 
 .3A, which provides that "[a] violation of this section is a Class A1 misdemeanor."
 
 N.C. Gen. Stat. § 14-277
 
 .3A(d) (2017). While "the district court division has exclusive, original jurisdiction for the trial of criminal actions ... below the grade of felony, and the same are hereby declared to be petty misdemeanors," N.C. Gen. Stat. § 7A-272(a) (2017), the superior court has jurisdiction to try a misdemeanor "[w]hen the charge is initiated by presentment," N.C. Gen. Stat. § 7A-271(a)(2) (2017).
 

 A presentment is a written accusation by a grand jury, made on its own motion and filed with a superior court, charging a person ... with the commission of one or more criminal offenses. A presentment does not institute criminal proceedings against any person, but the district attorney is obligated to investigate the factual background of every presentment returned in his district and to submit bills of indictment to the grand jury dealing with the subject matter of any presentments when it is appropriate to do so.
 

 N.C. Gen. Stat. § 15A-641(c) (2017). Simply stated, "a presentment amounts to nothing more than an instruction by the grand jury to the public prosecuting attorney to frame a bill of indictment."
 
 State v. Wall
 
 ,
 
 271 N.C. 675
 
 , 682,
 
 157 S.E.2d 363
 
 , 368 (1967) (citation omitted).
 

 Defendant contends no evidence in the record on appeal shows a presentment was filed with the superior court in accordance with N.C. Gen. Stat. § 15A-641(c). However, the amended record contains a certified copy of the presentment issued by the grand jury on 15 December 2014 and filed with the superior court on 28 January 2015. Thus, because the stalking charge was properly initiated by a presentment, we conclude that the superior court had subject-matter jurisdiction over the misdemeanor pursuant to N.C. Gen. Stat. § 7A-271(a)(2).
 
 See
 

 Petersilie
 
 ,
 
 334 N.C. at 178
 
 ,
 
 432 S.E.2d at 837
 
 ("When the record is amended to add the presentment, it is clear the superior court had jurisdiction[.]"). Defendant's argument is dismissed.
 

 *66
 

 II. Domestic Violence Protective Orders
 

 Defendant next contends the trial court abused its discretion in admitting the DVPOs and filings related thereto into evidence. He asserts that the findings of fact contained in the DVPOs had unfairly prejudiced defendant and "would have been confusing to the jury as to the issues" to be determined at trial.
 

 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2017). Whether the probative value of relevant evidence is substantially outweighed by " 'the danger of unfair prejudice, confusion of the issues, or misleading the jury' " such that the evidence should be excluded is a determination within the trial court's sound discretion.
 
 State v. Hyde
 
 ,
 
 352 N.C. 37
 
 , 54-55,
 
 530 S.E.2d 281
 
 , 293 (2000) (quoting N.C. Gen. Stat. § 8C-1, Rule 403 (1999) ). "Such a decision may be reversed for abuse of discretion only upon a
 
 *402
 
 showing that the trial court's ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision."
 
 State v. Handy
 
 ,
 
 331 N.C. 515
 
 , 532,
 
 419 S.E.2d 545
 
 , 554 (1992) (citations, quotation marks, and brackets omitted).
 

 Prior to trial in the instant case, defendant made an oral motion
 
 in limine
 
 to exclude the DVPOs from evidence. Defendant specifically objected to "anything going beyond just evidence that the [DVPO] was entered by the District Court Judge," asserting that it "would not give the defendant a fair opportunity to defend himself if we have put before the jury judicial findings. The jury may be confused and say, 'Well, a judge in District Court found that happened, so we're bound by that.' " In response, the State emphasized that defendant had been present for and given an opportunity to be heard at both DVPO hearings; that the elements of the stalking offense required proof that a reasonable person in the victim's circumstances would fear for her safety; and that the history between defendant and Lorrie as evidenced by and described within the DVPOs was therefore directly relevant to a fact of consequence at trial.
 

 We agree the DVPOs were relevant to show defendant's course of conduct as well as his motive to commit the offense of stalking.
 
 See
 

 State v. Morgan
 
 ,
 
 156 N.C. App. 523
 
 , 526-27,
 
 577 S.E.2d 380
 
 , 384 (2003) (holding that evidence of prior and expired DVPOs was admissible to show defendant's intent to kill). After reviewing the DVPOs, the trial court redacted those portions it found to be unfairly prejudicial to defendant, and only the redacted versions were admitted into evidence
 
 *67
 
 and published to the jury. As to defendant's argument that the jury was highly likely to regard the findings contained in the DVPOs as true and binding simply because they had been handwritten by a district court judge, the trial court's instructions to the jury included the following relevant excerpts:
 

 Members of the jury, all of the evidence has been presented. It is now your duty to decide from this evidence what the facts are.
 

 The defendant is presumed innocent. The State must prove to you that the defendant is guilty beyond a reasonable doubt.
 

 You are the sole judges of the weight to be given any evidence.
 

 The law requires the presiding judge to be impartial. You should not infer from anything that I have done or said that the evidence is to be believed or to be disbelieved, that a fact has been proven, or what your findings ought to be. It is your duty to find the facts and render a verdict reflecting the truth.
 

 Given that the trial court redacted the DVPOs and properly instructed the jury regarding the State's burden of proof as well as the jury's duty "to find the facts," we conclude that the trial court did not abuse its discretion in admitting the DVPOs and related filings into evidence.
 

 III. Rule 404(b) Testimony
 

 Defendant next contends the trial court erred in failing to exclude Holly's testimony that defendant had assaulted her in the past, that she was afraid of defendant, and that defendant told Holly "he would never be arrested again" and "he would not be taken alive." Defendant asserts that this testimony was only relevant to show propensity, or that defendant was a "bad guy," and does not fit within an exception listed in Rule 404(b) of the Rules of Evidence.
 

 At the outset, we note that defendant filed a motion
 
 in limine
 
 to exclude from evidence the fact that he had been charged with assaulting Holly, arguing that "the charge was dismissed by the State, having at this point little or no probative value." In response, the State represented to the trial court that it did not intend to introduce evidence of the charge or of defendant's arrest, but it did expect Holly to testify regarding the assault itself. The State argued that the testimony was directly relevant
 
 *68
 
 because it bore on the victim's reasonable fear of defendant. Defendant later withdrew his motion, explaining, "If the State is going to be allowed to ... have [Holly] testify that there was an assault, then I want to get in the end result of that."
 

 Defendant did not object during trial to any portion of Holly's testimony that he now
 
 *403
 
 challenges on appeal. Nevertheless, he contends the testimony should have been excluded by the trial court as it does not fit within any of the exceptions listed in Rule 404(b). He further argues that the testimony should have been excluded as unfairly prejudicial pursuant to Rule 403.
 

 Unpreserved errors in criminal cases are reviewed for plain error only. N.C. R. App. P. 10(a)(4). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citation omitted). That is, the defendant must prove that "absent the error the jury probably would have reached a different verdict."
 
 State v. Walker
 
 ,
 
 316 N.C. 33
 
 , 39,
 
 340 S.E.2d 80
 
 , 83 (1986) (citation omitted).
 

 Pursuant to Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2017). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident."
 

 Id.
 

 This list of permissible purposes is not exclusive, and "the fact that evidence cannot be brought within a listed category does not necessarily mean that it is inadmissible."
 
 State v. Groves
 
 ,
 
 324 N.C. 360
 
 , 370,
 
 378 S.E.2d 763
 
 , 769 (1989) (citation, quotation marks, and brackets omitted). Rather, there is a general rule of inclusion regarding "relevant evidence of other crimes, wrongs or acts by a defendant, subject to but
 
 one exception
 
 requiring its exclusion if its
 
 only
 
 probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged."
 
 State v. Coffey
 
 ,
 
 326 N.C. 268
 
 , 278-79,
 
 389 S.E.2d 48
 
 , 54 (1990).
 

 Here, the challenged portions of Holly's testimony were relevant not only to show defendant's propensity to commit the offense of stalking, but also established that the victim, Lorrie, was in reasonable fear of defendant. Holly testified to texting Lorrie about the assault and warning Lorrie to be careful, and that Holly herself was afraid of defendant. This portion of Holly's testimony demonstrates both that Lorrie had a legitimate basis for her fear of defendant and that her fear was reasonable
 
 *69
 
 as required by
 
 N.C. Gen. Stat. § 14-277
 
 .3A. Similarly, defendant's statements to Holly-that "he would never be arrested again" and "he would not be taken alive"-were made in reference to the assault and further illustrate a course of conduct that would cause a reasonable person to fear for her safety.
 

 Under these circumstances, defendant has failed to show that the trial court plainly erred in admitting the challenged portions of Holly's testimony.
 

 IV. Photographic Evidence
 

 Defendant next asserts that the trial court abused its discretion in admitting into evidence approximately twenty-eight photographs of firearms, ammunition, and surveillance equipment found throughout defendant's home during the execution of the search warrant. He contends that because "[t]here was no evidence of the use or presence of a firearm with regard to this offense, and no evidence that [defendant] used surveillance equipment in the commission of the crime of stalking," the probative value of the photographs was substantially outweighed by the danger of unfair prejudice.
 

 Pursuant to Rule 403 of the Rules of Evidence, in determining whether to admit photographic evidence, the trial court must weigh the probative value of the photographs against the danger of unfair prejudice to defendant.
 
 State v. Hennis
 
 ,
 
 323 N.C. 279
 
 , 285,
 
 372 S.E.2d 523
 
 , 527 (1988). Whether photographic evidence is admissible under Rule 403 is within the sound discretion of the trial court, and its ruling will not be reversed on appeal absent an abuse of discretion.
 

 Id.
 

 In the instant case, the photographs of defendant's firearms, ammunition, and surveillance equipment-all of which defendant legally possessed at the time the search warrant was executed-were wholly irrelevant to the issue of whether defendant had committed the offense of stalking. We therefore agree with defendant that the probative value of the photographs was substantially
 
 *404
 
 outweighed by the danger of unfair prejudice, and the trial court should have exercised its discretion by excluding the photographs. However, in light of the overwhelming additional evidence presented at trial, we conclude defendant has failed to show that the admission of the photographs amounted to prejudicial error.
 

 V. Motion to Dismiss
 

 In his final assignment of error, defendant challenges the trial court's denial of his motion to dismiss the charge of misdemeanor stalking
 
 *70
 
 where he contends the State "failed to prove that [defendant] was the person who created and mailed the inflammatory flyers."
 

 "When ruling on a defendant's motion to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 Id
 
 . "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994) (citation omitted). "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 Smith
 
 ,
 
 186 N.C. App. at 62
 
 ,
 
 650 S.E.2d at 33
 
 .
 

 On appeal, defendant does not assert that the State failed to present substantial evidence of each element of the stalking offense; rather, his sole argument is that there was insufficient evidence of defendant being the perpetrator of the offense. According to defendant, the only evidence linking him to the flyer was Holly's testimony, which he maintains was "inadmissible and prejudicial."
 

 As discussed in section III above, Holly's testimony was not inadmissible or unfairly prejudicial to defendant. Moreover, her testimony was subject to cross-examination, during which Holly admitted to having been embarrassed defendant was trying to reconnect with Lorrie; that she and defendant had disputes regarding money and property after their relationship ended; that she owned a computer and printer; that she did not inform Lorrie or law enforcement about the flyer when she first discovered it; that her computer was never examined by law enforcement; and that she takes medications for mental health issues.
 

 While defendant attempted at trial to raise doubt about the identity of the person who mailed the flyers-insinuating that Holly could have been the culprit-and although he challenges certain portions of Holly's testimony on appeal, he raises no challenge to that portion of Holly's testimony in which she stated defendant showed her a copy of the flyer, told her that he intended to mail them, and asked her for addresses, nor does he challenge Holly's claim to have found a stack of the flyers among defendant's belongings. We therefore conclude the State presented substantial evidence to support a conclusion that defendant was the perpetrator of the offense, and the trial court did not err in denying defendant's motion to dismiss.
 

 *71
 

 Conclusion
 

 Although we agree with defendant that the trial court abused its discretion under Rule 403 in admitting into evidence numerous photographs of firearms, ammunition, and surveillance equipment found throughout defendant's home, for the reasons stated herein, we conclude that defendant received a fair trial, free from prejudicial error.
 

 NO PREJUDICIAL ERROR.
 

 Judges TYSON and ZACHARY concur.