COMMONWEALTH vs. ANGUS D. GILBERT.

Suffolk.    November 12, 1895. — December 9, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Homicide — Trial — Influence of Liquor as Excuse for Crime — Extreme Atrocity or Cruelty.*

An hysterical outbreak of a mother, while on the stand as a witness at the trial of an indictment against a third person for the murder of her child, in which she accuses him of the crime, but not in response to any question, is not sufficient ground for stopping the trial, and the jury, in the charge to them, having been fully cautioned to disregard the accusation by the witness, the defendant is afforded no ground of exception.

The mere fact that a person is slightly under the influence of liquor is no legal excuse for crime, even though the liquor was taken involuntarily.

A murder committed with malice aforethought may be found to have been committed with extreme atrocity or cruelty, although the murderer did not know that his act was extremely atrocious or cruel.

INDICTMENT, in three counts, for murder. The first count, which did not differ materially from the others, was as follows:

" The jurors for the Commonwealth of Massachusetts on their oath present, that Angus D. Gilbert, of Boston aforesaid, on the tenth day of April, in the year of our Lord one thousand eight hundred and ninety-five, at Boston aforesaid, with force and

arms in and upon one Alice M. Sterling feloniously, wilfully, and of his malice aforethought, did make an assault; and that the said Gilbert, with a certain axe, the said Alice in and upon the left side of the head of said Alice then and there feloniously, wilfully, and of his malice aforethought, did strike and bruise, giving to the said Alice, then and there, with the axe aforesaid, in and upon said left side of the head of said Alice, one mortal wound, of which said mortal wound the said Alice then and there instantly died. And so the jurors aforesaid, upon their oath aforesaid, do say, that the said Angus D. Gilbert the said Alice M. Sterling then and there, in manner and form aforesaid, feloniously, wilfully, and of his malice aforethought, did kill and murder; against the peace of said Commonwealth, and contrary to the form of the statute in such case made and provided."

Trial in the Superior Court, before *Dunbar* and *Sheldon*, JJ., who allowed a bill of exceptions, in substance as follows.

The government called as a witness Alice Sterling, the mother of Alice M. Sterling named in the indictment, who, at the close of her direct examination, while upon the stand as a witness, in the presence and hearing of the jury, loudly and in a very excited manner uttered these words concerning the defendant, " Only that man," or, " Oh, that man, he has killed my Mamie, my darling, he has murdered her, murdered her," and also, at the close of her re-direct examination, while upon the stand as a witness, in the presence and hearing of the jury, further said in a loud and excited manner concerning the defendant, " That is the murderer of my little Mamie, the murderer of her, the murderer." This outbreak was not in response to any question, and was stopped as soon as was practicable. In consequence of these statements and exclamations of the witness, the defendant, before the introduction of any evidence on his part as to the merits of the case, moved that the case be taken from the jury on the ground that these words must necessarily unfavorably affect their minds against the defendant to such an extent that they could not be relied upon to render an impartial verdict. The motion was overruled; and the defendant excepted.

The defendant introduced evidence tending to show that Charles Dunbrack, an uncle of the defendant, had been insane for the past twenty-five years, a large part of the time violently so,

and had been confined in an asylum for the insane; that Mary Bruce, an aunt, had been insane occasionally during the past thirty years; that said Charles and Mary were his mother's brother and sister; that two children of John Dunbrack, a cousin of his mother's, had been idiotic; and that George Gilbert, the defendant's father, drank to excess before his marriage, and was an habitual drunkard when the defendant was two years old.

The government introduced no evidence tending to control any part of the foregoing testimony.

There was also evidence of witnesses called by the government, and of others, tending to show that the defendant had often been seen slightly under the influence of liquor, and had at times drunk so much as to become intoxicated, and that on the day of the alleged homicide he had been drinking to such an extent as to attract observation. Upon the foregoing evidence the defendant contended that he had contracted the habit of drinking to a degree which had created and amounted to an uncontrollable appetite for intoxicating liquors; which position the government controverted.

There was evidence tending to support the allegations of the indictment, and to show the attendant circumstances. On this evidence the government contended that the defendant had committed the murder charged, and that it was committed with deliberately premeditated malice aforethought, and in the commission of an assault upon the deceased with intent to commit rape upon her, and with extreme atrocity or cruelty.

The defendant requested the following instructions to the jury:

" 1. The jury must be satisfied, in order to convict the prisoner, not only of the doing of the acts which constitute murder, but that they proceeded from a responsible agent, one capable of committing the offence.

" 2. If the jury are satisfied that the defendant's father was a man of intemperate habits, as testified to by the witnesses in this case, and that the defendant inherited a tendency to drink, which was likely to develop an uncontrollable appetite for intoxicating liquors and had contracted such appetite, then such appetite is a disease, and intoxicating liquors taken and used to satisfy such an appetite are not taken and used voluntarily; and if the jury are satisfied that the offence charged in this indictment was com-

mitted while under the influence of liquors so taken, then the intent necessary to constitute murder is wanting, and the defendant cannot be found guilty, as charged in the indictment.

" 3.  The jury, in determining the degree of the offence charged in the indictment, may consider the facts and circumstances of the defendant's drinking, and its effects upon his mental condition at the time of the alleged commission of the offence charged in the indictment.

" 4.  The jury may consider, in arriving at their verdict, the fact that the defendant was subject, by reason of his family history as testified to in this case, to a predisposition to insanity ; and find on the evidence that his free indulgence in the use of intoxicating liquors, as testified to in this case, developed such insanity, and that said crime was committed while in such a state of insanity.

" 5.  If the defendant was subject to a tendency to insanity which was liable to be incited by intoxication, of which he was ignorant, and in consequence of intoxication, though voluntary, his mental faculties became excited to diseased action to such an extent that his mind was overcome or his reason perverted, the jury may consider such facts favorably for the defendant in arriving at their verdict.

" 6.  If the jury find that the offence charged was committed by the defendant while in a state of mind which was the combined result of his predisposition by inheritance to insanity and his free indulgence in intoxicating liquors, then they may find him not guilty by reason of insanity, or guilty of an offence less than that of murder in the first degree.

" 7.  The words ' extreme atrocity or cruelty ' used in the statute do not mean mere violence, but involve the knowledge of the character of the act in the mind of the agent."

Upon the subjects embraced in the foregoing requests, the jury were instructed, among other things, as follows:

" Now, manslaughter is the unlawful taking of human life without malice aforethought.  Manslaughter may be committed with a real design and purpose to kill, where the guilt is mitigated by the design being suddenly formed in the heat of a mutual combat, or through the virulence of some sudden passion arising from some great and sudden provocation which the law

considers adequate to call for an allowance.   Or it may be when the death of another is caused by some unlawful act, such as would not ordinarily be expected to cause death, and without any intention to take life.

"Murder is manslaughter with an additional element.   It is the unlawful killing of a person with malice aforethought.   And the word 'malice' in this connection includes not only anger, hatred, revenge, which are sometimes spoken of as express malice, but also every other unlawful and unjustifiable motive. The wilful purpose of carrying out one's own determinations without any regard for the rights of others is enough of itself in the meaning of the law to constitute malice.   This word comprehends every unlawful motive, every wicked intent or mischievous purpose.   Any taking of human life with such an unlawful purpose or from such an unlawful motive is, accordingly, malicious.

"Now, to constitute the crime of murder this malice must be aforethought, for murder is the unlawful taking of human life with malice aforethought.   But the term aforethought does not necessarily imply any specific intent or purpose deliberately formed and entertained, and carefully premeditated before the commission of the act.   It is sufficient if the wicked intent or purpose is distinctly prior to the killing and exists at the time of the killing.   It is enough if it precedes the killing by any interval. . . .

"It is necessary, whatever the evidence which is introduced before you, that that evidence should be sufficient to satisfy you of the guilt of the defendant, so that you cannot come to any other reasonable conclusion than that he is guilty.   If the evidence before you does satisfy you of that, then it matters not whether it is evidence of circumstances, or whether it is evidence of statements made by the defendant, or whether it is the testimony of witnesses to what they have seen or to what they have heard.   The important question is, as to all these matters, Does the evidence point with that degree of certainty which I have stated to the conclusion that this defendant did take the life of this girl with malice aforethought in the sense in which I have used these words, — while engaged, that is, in the prosecution of his own unlawful ends, without

regard, with a wanton disregard, of her rights? And did the formation of an unlawful purpose on his part precede the act by which he carried out and executed that purpose? If it did, why then he has murdered her. That is, he has killed her with malice aforethought, unless some other facts should be shown to exist here.

" I told you a little while ago that it was necessary for the prosecution to make out beyond a reasonable doubt every fact which was essential to the guilt of this defendant. Now one thing which is essential to the guilt of this defendant is to show that this defendant has committed the crime. And it is a general rule of law that, in order to be able to commit a crime, a person who is charged with its commission must have intelligence and capacity enough to have a criminal intent and purpose. At any rate, when the charge is of the commission of such a crime as this, if he was not capable of a criminal intent and purpose, if he had no criminal intent and purpose in what he did, then he cannot have been guilty of a crime in doing what he did. If his reason and mental powers were either so deficient that he had no will and no conscience, no controlling mental powers, or if through the overwhelming power of mental disease his intellectual power was for the time obliterated, then he was not a responsible moral agent, and is not answerable for criminal acts. . . .

" And it is for you to say, considering all the evidence which has been introduced bearing on that subject, — including the testimony of experts, including testimony which it has been claimed by the defence tends to establish the existence of a predisposition to insanity in this defendant, including the testimony, so far as you have it, of the condition of this defendant before the time in question, including a consideration of what his condition was immediately after the commission of this act, including all that he said and did, and putting yourselves, so far as you can, in a position to look at the whole of it, — whether or not at this time he was a responsible being.

" You are to look at all this evidence, further in the light of the fact that, there being evidence in the case, it is incumbent upon the prosecution to satisfy you affirmatively that he had sufficient mental capacity to be responsible for his acts; and

you are also to look at it in the light of the presumption which usually exists in favor of sanity. That is, you are to consider all the matters which have been put in evidence, you are to consider this presumption in favor of sanity which usually exists in the case of most men, giving to that presumption just exactly that degree of weight that you think it ought to have, . . . and you will remember that it is for the prosecution affirmatively to satisfy you, with the same degree of certainty as on other parts of the case, of the fact that this defendant is responsible to human law for what he did, and then you will say whether or not he is responsible or irresponsible. . . .

" He is not to be excused from criminal responsibility if he is able to distinguish between right and wrong, — if he is able to understand the nature of the act which he is committing and about which inquiry is made, and to understand its nature and the consequences which ought to flow from it, — unless you should find that he was at the time overpowered by some overwhelming impulse proceeding from mental disease, which, for the time being, overcame and obliterated his volition, his will, his conscience, his ability to control himself, and thus led him to commit an act although he knew it to be wrong; or unless, when he committed the act, he was deprived of his own consciousness or power of self-control by some mental disease, so that the act in question, although it might have been done by his hand, was not the product of his mind and did not proceed from his will, and so cannot correctly be said 'to be really in any sense his act. He is not to be excused, and this defendant is not to be excused, from the consequences of any crime he may have committed, if he had that reason and capacity sufficient to enable him to judge as to the particular act between right and wrong, unless at the time he did it his will, his moral and mental power, was so overpowered that what his hand committed was not really done by himself. . . .

" It is not necessary that it should be shown either that he was sane or that he was not partially insane, provided it is shown that he had at the time this ability to distinguish between right and wrong with reference to the acts which he did, and if it also appears that he was not overpowered by some overwhelming impulse proceeding from a mental disease which overcame his will

and made the act which he committed not really his act, but the mere act of his body without that body being guided by his own controlling or directing will.

" And this would be so if there were such a mental disease in him at this time, whether that mental disease incapacitated him from distinguishing between right and wrong, or whether it were the source of such an overwhelming and uncontrollable impulse as I have spoken of, no matter from what source that mental disease originated, if it really existed to the extent that I have stated. Whether this mental disease was the result of some prior disease, or whether it was the development of an inherited predisposition to insanity, or whether it was the result of prior habits of intoxication in himself or in his father, — it is not claimed, of course, that any habits of intoxication in his father subsequent to his own birth would be material to this question, but habits of intoxication in his father prior to his birth might be a matter for you to consider, — or in whatever other way that mental disease originated, if he had such a mental disease, if his mind was from mental disease in such a state that he could not then distinguish between right and wrong, or if he was the victim of an uncontrollable impulse to do wrong, though he knew it to be wrong, so that he could not refrain from it, if his will was overpowered and his conscience was. overpowered, and what his hand did was not really his act, why then he is not to be held responsible for it. But if he did have that power, and if he did act when he was able to control himself so far as mental disease is concerned, why then he would be responsible. . . .

" If a man, being able to drink or to abstain from drink as he chooses, voluntarily takes intoxicating liquor until he has in part lost the control of himself, that does not excuse him in the remotest degree from the consequences of any act which he does under the influence of that intoxicating drink. There may be circumstances, which I will speak of presently, in which that question may have a bearing upon the degree of the crime which is charged in this case, at any rate so far as it is affected by one of the provisions of our statute, but the general principle is that drunkenness voluntarily produced is no excuse for any act which is committed by the person who has thus voluntarily made himself drunk.

" Of course, this would not apply to a state of intoxication for which a man was not himself responsible ; if he had been drugged, for example, or if he had had liquor poured down his throat without his own knowledge ; but if he was not, at the time of committing any crime with which he is charged, in a state where he cannot control himself by reason of mental disease, whether it be from inability to distinguish between the right and wrong of any particular act, or because he is under the sway of an overpowering impulse which he cannot resist, if he is not in that condition from mental disease, but is under the sway of a mere evil passion of his own, which, in its inception at any rate, he might have controlled and ought to have controlled, then he is to be held responsible. . . .

" Now if, in consideration of all this matter, you should find that you are not satisfied with the requisite degree of certainty that this defendant, although he committed an act, if you should find that he did, was then responsible for what he did, it would be your duty to return a verdict of not guilty by reason of insanity.  Not the general verdict of guilty, or not guilty, but the special verdict, not guilty by reason of insanity, in order that the proper course which would follow upon such a finding might then be taken by the court.

" If, however, you shall be satisfied that he was at the time in question responsible for what he did, and if you shall also be satisfied with the requisite degree of certainty that Alice M. Sterling came to her death unlawfully by his hands, with malice aforethought on his part, or, in other words, that he committed the crime of murder, there will then be a further question for you to pass upon.

" By our law murder is divided into two degrees : murder in the first degree is murder which is committed with deliberately premeditated malice aforethought, or murder which is committed in the commission of or attempt to commit some other crime itself punishable either with death or imprisonment for life, or murder committed with extreme atrocity or cruelty.  And any murder which does not appear to be murder in the first degree, that is, any murder which has not been committed with either one of these three aggravating circumstances, is murder in the second degree. . . .

" In the first place, the government contends not only that this defendant did murder Alice M. Sterling, but that he committed this murder with deliberately premeditated malice aforethought. You will not need, of course, to come to the consideration of this part of the case unless you shall first have found that it is proved with the requisite degree of certainty that he murdered her, and accordingly, in what I have to say upon this part of the case I shall take it for granted that you have found him guilty of the murder charged, in order that I may make perfectly plain what I have to say about murder in the first degree. If you do not find him guilty of murder at all, of course you will not come to the consideration of this part of the case. . . .

" You must also be satisfied that his mind was in such a condition that he was capable of deliberate premeditation. For example, it is settled law that drunkenness is no excuse for any crime committed under its influence, and yet if at and prior to the commission of murder a defendant is so far overcome by intoxicating liquors, or by disease induced by the previous use of intoxicating liquors, as to be mentally incapable of deliberate premeditation, even though he may be responsible for his act, then he cannot have committed his crime with deliberately premeditated malice aforethought, and so cannot upon this ground be convicted of murder in the first, but only in the second degree. And so, also, if this defendant did murder this girl, but when he did so was by reason of any mental weakness or partial insanity, or any great mental disturbance or overwhelming disquietude or oppression incapable of deliberate premeditation, even though he was responsible for his acts, then he cannot upon this ground be convicted of murder in the first degree, but only in the second degree. . . .

" It is also contended by the government that this was murder committed with extreme atrocity or cruelty, and if it was, then it is murder in the first degree. Now the words 'atrocity and cruelty' are used here in their common and ordinary acceptation. Atrocity means horrible or mean wickedness, extreme heinousness or cruelty, and the question to be determined is, Was this a murder attended with such barbarity and cruelty that you can properly say it was extremely atrocious or extremely cruel, not simply atrocious, not simply cruel, but either extremely atrocious

or extremely cruel? that is, was it committed with extreme atrocity or with extreme cruelty ? What circumstances of enormity or aggravation, what acts of barbarity or cruelty, were there attending the commission of this crime? Were these acts and circumstances such and so great as to warrant you in saying that this was a murder fitly to be characterized as extremely atrocious or cruel? You are to determine just what was done and just what the circumstances were, and if it seems to you, having done that, that those circumstances, those acts, were of such barbarity and enormity that this was a murder so far exceeding the atrocity and cruelty of all murders that you can properly say it was extremely atrocious, or that you can properly say it was extremely cruel, then you will be justified in returning a verdict of guilty of murder in the first degree upon that ground. . . .

" You will see at once that it is your duty to dismiss from your minds the unfortunate language which, in the excitement of her own feelings, was used by the mother of this girl while testifying in your presence. She gave evidence in this case which is claimed by the Commonwealth to have been important. That evidence you will consider just as you consider the evidence of every other witness. But the language which she used, the attack which she made upon the defendant, while it may have been natural under the circumstances, was something as to which she could have no knowledge, it was something as to which she had no evidence to give to you, and it was something which you will not allow in the remotest degree to prejudice your minds against the defendant. You will not consider it in your deliberations at all. You will dismiss it wholly and absolutely from your judgment. You will act as if you had never heard it. And I regret that I cannot state that proposition in stronger words than I have. If I could state it more strongly, I should feel that it was my duty to do so, because you are to decide in the terms of your oath according to the evidence given you.

" Now, summing up what I have said to you, if this was a murder committed with deliberately premeditated malice aforethought, you will return a verdict of guilty of murder in the first degree. If you shall find with the requisite degree of certainty that it was a murder committed while engaging in assaulting this girl,

being then under the age of nine years, with the intent of having carnal knowledge of her body either by force or persuasion, you will then return a verdict of guilty of murder in the first degree. So also if you should find that it was a murder committed with extreme atrocity or cruelty, in either of those three cases, you will return a verdict of guilty of murder in the first degree. If you should find that this defendant has been guilty of the murder of this girl without these aggravating circumstances, you will return a verdict of guilty of murder in the second degree. If you find that this girl came to her death at the hands of the defendant, but that the defendant is not guilty of having murdered her because he had no controlling mind at the time, or because he was unable at the time he did it, by reason of mental disease, to distinguish between right and wrong, in other words, if you find that, though she came to her death by his hands, he did not murder her, because he was not then responsible for what he did, you will return a verdict of not guilty by reason of insanity. And if you should find that she did not come to her death at his hands at all, you will return a general verdict of not guilty."

'At the close of the charge to the jury, the defendant's counsel called the attention of the court to the prayers for instructions which they had presented, and were told that, so far as granted, they had been embodied in the charge; that the last prayer was refused entirely; and that the others had either been given in substance, or given with some modification.

The jury returned a verdict of murder in the first degree; and the defendant alleged exceptions.

*W. W. Doherty & J. E. Leach*, for the defendant.

*H. M. Knowlton*, Attorney General, & *G. C. Travis*, First Assistant Attorney General, for the Commonwealth.

ALLEN, J. 1. The government was in no way responsible for the outbreak of the witness. It was an incident which could not be guarded against in advance. The witness was called because her testimony was deemed to be important, in the interest of justice. Such an outbreak might occur from a hysterical or highly emotional person who was not a witness. The jurors are supposed to be men of sufficient character and sense to enable them to disregard such an incident. To assume the contrary would be

to strike a blow at the system of trial by jury, which is thought to be a great bulwark for innocent persons who are accused of crime. The court might well refuse to stop the trial. The jury were fully cautioned, everything was done which could be to prevent injury to the prisoner, and time enough elapsed before the case was committed to them to enable them to recover from any temporary excitement. *Commonwealth* v. *White*, 147 Mass. 76. *Nichols* v. *Nichols*, 136 Mass. 256. *Lindsay* v. *State*, 46 Neb. 177.

2. The second request for instructions was properly refused. According to this request, if the prisoner had involuntarily taken a small quantity of liquor and was under its influence, though it was not enough to stupefy him or to cause him to lose the control of his faculties to any considerable extent, it would follow, as matter of law, from the mere fact that the liquor was swallowed involuntarily, that the intent necessary to constitute murder was wanting, and that he could not be found guilty. The mere fact that one is slightly under the influence of liquor is certainly no legal excuse for crime, even though the liquor was taken involuntarily. It is very plain that the ruling asked for could not properly be given. The charge to the jury was quite full in respect to insanity, and to the effect of prior habits of intoxication in the prisoner and in his father upon the prisoner's mental condition, and also in respect to intoxication for which a man is not himself responsible; and no objection is made to its sufficiency except so far as it was inconsistent with the request which we have considered. The refusal to comply with that request furnishes no ground for a new trial.

3. There was no testimony to show that on the day of the homicide the prisoner was intoxicated to any greater degree than this, namely, that " he had been drinking to such an extent as to attract observation."

In accordance with requests of the prisoner's counsel, the jury were instructed that it was incumbent upon the prosecution to satisfy them that he had sufficient mental capacity to be responsible for his acts, with full explanations in respect to insanity and intoxication; and no objection is now urged to these instructions and explanations. But as a final request the prisoner's counsel asked the court to instruct the jury that " the words ' extreme

atrocity and cruelty' used in the statute do not mean mere violence, but involve the knowledge of the character of the act in the mind of the agent." This instruction was refused.

This request relates to the degree of murder. By Pub. Sts. c. 202, § 1, " Murder committed with deliberately premeditated malice aforethought, or in the commission of or attempt to commit a crime punishable with death or imprisonment for life, or committed with extreme atrocity or cruelty, is murder in the first degree." And by § 2, " Murder not appearing to be in the first degree is murder in the second degree."

The jury were clearly instructed that there could be no conviction of murder in either degree unless malice aforethought should be proved, with explanations of what this means and involves ; and that no question of degree would arise unless they should first determine that the prisoner had committed the crime of murder with malice aforethought. The question presented by the final request therefore is this: Assuming a killing with malice aforethought, which would be murder in the second degree, was it incumbent on the prosecution, in order to obtain a conviction of murder in the first degree on the ground of extreme atrocity or cruelty, to show that the prisoner had knowledge of the character of the act ? This must mean, we think, knowledge that the act of killing was attended with extreme atrocity or cruelty.

This precise question has not been presented in this form before, though decisions have been cited as bearing upon it. *Commonwealth* v. *Desmarteau*, 16 Gray, 1. *Commonwealth* v. *Pemberton*, 118 Mass. 36. *Commonwealth* v. *Devlin*, 126 Mass. 253. See also *Commonwealth* v. *Lufkin*, 7 Allen, 579; *Commonwealth* v. *McClellan*, 101 Mass. 34, which are cases of cruelty to animals.

We do not think this special knowledge of the character of the act is an element which enters into the statutory description of a murder committed with extreme atrocity or cruelty. The intelligence and mental capacity requisite for the commission of murder were found to exist. Knowledge that the crime was extremely atrocious or cruel is not required. If the prisoner was a responsible agent, the statute providing that murder committed with extreme atrocity or cruelty is murder in the first

degree calls for no greater degree of knowledge than is required for a conviction of murder in the second degree.    This is a separate and distinct ground from that of deliberately premeditated malice aforethought; the requirement of deliberate premeditation clearly is not attached to murder committed with extreme atrocity or cruelty; nor is any degree of purpose, intention, or knowledge, beyond what is involved in the commission of murder with malice aforethought.    This of itself excludes an accidental homicide.    A murder committed with malice aforethought may be found to have been committed with extreme atrocity or cruelty, even though the murderer did not know that his act was extremely atrocious or cruel.    The circumstances would give him reason to believe that he was causing pain to his victim, and indifference to such pain, as well as actual knowledge thereof and taking pleasure in it, constitutes cruelty; and extreme cruelty is only a higher degree of cruelty.

*Exceptions overruled.*