## COMMONWEALTH *vs.* GLEN J. BREESE.

Suffolk.   March 8, 1983. — June 21, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Homicide.   Practice, Criminal,* Instructions to jury, Retroactivity of
judicial holding, Capital case.

The holding of this court in *Commonwealth* v. *Perry,* 385 Mass. 639
(1982), that a jury must be permitted to consider a defendant's intoxi-
cation in determining whether he committed murder with extreme
atrocity or cruelty, is to be applied only to cases tried after the decision
of *Commonwealth* v. *Gould,* 380 Mass. 672 (1980), which announced
the rule that a jury could consider a defendant's mental illness in mak-
ing that determination, and which "clearly foreshadowed" the Perry
holding.   [541-543]

The holding of this court in *Commonwealth* v. *Gould,* 380 Mass. 672
(1980), that a jury may consider a defendant's mental illness in deter-
mining whether he committed murder with extreme atrocity or cruel-
ty, is to be applied prospectively only.   [543-550]

Discussion of the factors to be considered by an appellate court in deter-
mining whether a new rule of decisional law affecting the rights of
criminal defendants should be applied prospectively only.   [546-550]


INDICTMENT found and returned in the Superior Court on
June 26, 1978.

After review by this court reported in 381 Mass. 13
(1980), a motion for a new trial was considered by *Brogna,*
J.

*Daniel F. Featherston, Jr.,* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the
Commonwealth.

O'CONNOR, J.   Glen J. Breese was convicted of murder in
the first degree on February 1, 1979, after being tried on
theories of deliberate premeditation and extreme atrocity or
cruelty.   We affirmed the conviction in a decision rendered
June 26, 1980.   See *Commonwealth* v. *Breese,* 381 Mass. 13
(1980).   Breese now appeals from the denial of his motion

for a new trial, filed after rescript. See G. L. c. 278, § 33E. He argues that the trial judge erred in instructing the jury that they should not consider evidence of the defendant's intoxication in determining whether the murder was committed with extreme atrocity or cruelty. Since the challenged instructions accurately reflected the law as revealed by our decisions prior to Breese's trial, see, e.g., *Commonwealth* v. *Monsen*, 377 Mass. 245, 254 (1979); *Commonwealth* v. *Appleby*, 358 Mass. 407, 415-416 & n.5 (1970), the validity of Breese's claim of error depends on whether our holding in *Commonwealth* v. *Perry*, 385 Mass. 639, 648-649 (1982), applies retroactively to his trial. In *Perry*, which was decided more than three years after Breese's trial, we held that the jury must be permitted to consider the defendant's intoxication in determining whether he murdered with extreme atrocity or cruelty. *Id.* There was evidence that Breese was intoxicated at the time of the killing.

We hold that *Perry* is the law only in cases tried after our decision in *Commonwealth* v. *Gould*, 380 Mass. 672 (1980). Since Breese was tried before *Gould* was decided, the judge's instructions on extreme atrocity or cruelty were not erroneous. Finding no error, we affirm the denial of Breese's motion for a new trial. The defendant's appeal does not bring to the court "the whole case for its consideration of the law and the evidence." G. L. c. 278, § 33E, as amended through St. 1979, c. 346, § 2. See *Commonwealth* v. *Smith*, 381 Mass. 141, 146 (1980); *Commonwealth* v. *Harrington*, 379 Mass. 446, 448 (1980); *Commonwealth* v. *Nolin*, 373 Mass. 45, 52 (1977). Consequently, we do not inquire whether, even in the absence of error, justice requires a new trial or the entry of a verdict of a lesser degree of guilt.

In deciding whether *Perry* is retroactive, we first must resolve whether the decision announced a new rule. Decisional law usually is retroactive. When a decision announces a new rule, however, the issue arises whether it will be applied only prospectively. The issue is resolved by the application of a three-part test which we discuss later in this

opinion. That test is not triggered, however, unless the rule announced is new. The requirement of newness has been stated in various ways. In *Chevron Oil Co.* v. *Huson,* 404 U.S. 97, 106 (1971), the Supreme Court declared that in order for one of its decisions "to be applied nonretroactively [it] must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . ." See *Desist* v. *United States,* 394 U.S. 244, 248 (1969) (for decision to be applied prospectively only, it must be "a clear break with the past"); *Hanover Shoe, Inc.* v. *United Shoe Mach. Corp.,* 392 U.S. 481, 499 (1968) (question of nonretroactive application of decision not presented unless decision "constitute[d] a sharp break in the line of earlier authority or an avulsive change which caused the current of the law thereafter to flow between new banks").

*Perry* did not announce a new rule. The decision was "clearly foreshadowed" by *Gould.* In *Gould, supra* at 684-685, we reasoned that, "if a malicious mind may be considered as evidence that a defendant committed a murder with extreme atrocity or cruelty, then fairness requires that an impaired mind may also be considered as evidence bearing on whether or not the defendant committed the murder with extreme atrocity or cruelty." We reasoned further that "[t]he jurors' broad discretion [in determining whether a murder was committed with extreme atrocity or cruelty] will more accurately reflect the community's conscience, goals, and norms, if the jurors are . . . permitted to consider the defendant's peculiar mental state . . . ." *Id.* at 685. Finally, we remarked that "[i]mpairment of a defendant's ability to make a decision in a normal manner may have a direct bearing on the degree of murder, and consequently, on the issue of extreme atrocity or cruelty." *Id.* at 686. In *Perry,* we recognized that a defendant's mental state may be affected by intoxication as well as by mental illness. Our holding that the jury must be permitted to consider the defendant's intoxication in determining his degree of culpability was based exclusively on *Gould.*

Since *Perry* did not announce a new rule, but was clearly foreshadowed by *Gould,* we hold that the law as stated in *Perry* applies retroactively to all trials conducted after the date of the *Gould* decision. See *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 97-98 (1979). Reaching this conclusion, however, does not help Breese, who was tried before *Gould* was decided. Consequently, we must consider whether *Perry* is retroactive to cases tried prior to *Gould.* In making this determination, we consider whether *Gould* is retroactive. *Perry* was a mere application of principles set forth in *Gould.* The issue of their retroactive effect should be resolved consistently.

In determining whether *Gould* is retroactive, we first examine the opinion. In *Gould,* we reversed the first degree murder conviction of a mentally impaired defendant who had been tried under a theory of extreme atrocity or cruelty. We did so, not because the judge's instructions on extreme atrocity or cruelty were erroneous, but pursuant to our duty under G.L. c. 278, § 33E, "to consider broadly the whole case on the law and the facts to determine whether the verdict is 'consonant with justice.'" *Gould,* 380 Mass. at 680, quoting from *Commonwealth* v. *Davis,* 380 Mass. 1, 15 n.20 (1980). We noted that "General Laws c. 278, § 33E, 'operates as a type of "safety valve" by ensuring review as to all aspects of cases regardless of the absence of claim of error.' *Commonwealth* v. *Brown,* 376 Mass. 156, 168 (1978)." *Gould, supra,* quoting from *Commonwealth* v. *Cole,* 380 Mass. 30, 38-39 (1980). Thus, the prin iple that a defendant is entitled to have the jury consider his mental impairment on the issue of extreme atrocity or cruelty was not applied retroactively even to Gould.

In five direct appeals argued subsequent to *Gould,* defendants convicted prior to *Gould* sought either a reversal or a modification of their convictions on the ground that the instructions at their trials on deliberate premeditation or extreme atrocity or cruelty were not consistent with the principles announced in *Gould.* In *Commonwealth* v. *Cunneen, ante* 216 (1983), *Commonwealth* v. *Brown,* 387 Mass. 220,

225-227 (1982), and *Commonwealth* v. *Shelley,* 381 Mass. 340, 354-355 (1980), the defendants did not assert that the failure to give instructions consistent with *Gould* was error. Instead, the defendants sought relief only under G. L. c. 278, § 33E. As a consequence, the question whether *Gould* was retroactive was not presented. We reviewed the defendants' claims only to determine whether the verdicts were consonant with justice, using the facts of *Gould* as a benchmark. We concluded in those cases that, since the evidence of mental impairment was weaker than it was in *Gould,* the judges' failure to instruct the jury in terms consistent with *Gould* created no likelihood of a miscarriage of justice. Those cases shed no light on the retroactivity of *Gould.* In *Commonwealth* v. *Brown,* 386 Mass.17, 32-33 (1982), and *Commonwealth* v. *Chubbuck,* 384 Mass. 746, 756-757 (1981), the defendants asserted that the failure to give jury instructions in accordance with *Gould* was error, and requested relief under G. L. c. 278, § 33E. We did not apply *Gould* retroactively, and we denied relief under c. 278, § 33E.

We have never given retroactive effect to *Gould.* This case requires us to decide whether the law as stated in *Gould* applies retroactively to the defendant's trial. If *Gould* is retroactive to any date before it was decided, it must be retroactive to all trials that took place on or after that date.

As the first step in our analysis, we consider whether *Gould,* in holding that the jury may consider a defendant's mental illness in determining whether a murder was committed with extreme atrocity or cruelty, announced a new rule. Prior to *Gould,* the court long had held that neither specific intent nor a knowledge of the nature of one's acts was necessary for conviction of murder with extreme atrocity or cruelty. In 1858, the Legislature classified the three types of murder in the first degree in language substantially the same as that now appearing in G. L. c. 265, § 1. See St. 1858, c. 154, § 1. Two years later, this court held that proof of murder committed "with extreme atrocity or cruel-

ty" did not require proof of premeditation. *Common-wealth* v. *Desmarteau,* 16 Gray 1, 9-10 (1860).

In *Commonwealth* v. *Gilbert,* 165 Mass. 45 (1895), the court considered in more detail the state of mind required for conviction of murder with extreme atrocity or cruelty. It concluded: "Knowledge that the crime was extremely atrocious or cruel is not required. . . . [T]he statute providing that murder committed with extreme atrocity or cruelty is murder in the first degree calls for no greater degree of knowledge than is required for a conviction of murder in the second degree. . . . [T]he requirement of deliberate premeditation clearly is not attached to murder committed with extreme atrocity or cruelty; nor is any degree of purpose, intention, or knowledge, beyond what is involved in the commission of murder with malice aforethought. . . . A murder committed with malice aforethought may be found to have been committed with extreme atrocity or cruelty, even though the murderer did not know that his act was extremely atrocious or cruel." *Id.* at 58-59.

The court's conclusions in *Gilbert* were echoed by decisions in the decade preceding *Gould.* In *Commonwealth* v. *Appleby,* 358 Mass. 407 (1970), the court said: "It is not necessary . . . to show that [murder with extreme] atrocity or cruelty was premeditated or that the defendant knew his conduct constituted extreme atrocity or cruelty." *Id.* at 415. The court held that evidence of the defendant's intoxication was not admissible on the issue of extreme atrocity or cruelty because the intent to be cruel was not relevant. *Id.* at 416 & n.5. In *Commonwealth* v. *Golston,* 373 Mass. 249, 260 (1977), cert. denied, 434 U.S. 1039 (1978), the court stated: "There is no requirement that the defendant know that his act was extremely atrocious or cruel, and no requirement of deliberate premeditation." Finally, in *Commonwealth* v. *Monsen,* 377 Mass. 245 (1979), the court observed: "To import a mens rea requirement into the words 'extreme atrocity or cruelty' would be to blur the distinction between that form of murder in the first degree and the premeditated variety. . . . Although the inference that

the actor possesses a particularly brutal state of mind might be warranted by the objective circumstances of the killing, no such inference is necessary in order to convict. . . . Once malice . . . [is] shown, we need look only to objective evidence of extreme atrocity or cruelty to support a conviction . . . ." *Id.* at 254-255.

In addition to discussing the nature of the crime, 'the court in decisions rendered prior to *Gould* detailed certain factors the jury were permitted to consider in determining whether a murder was committed with extreme atrocity or cruelty. These factors reflected the court's view that the defendant's guilt was to be determined by objective criteria, not focusing on the defendant's mental state. The jury were permitted to consider the consciousness and degree of suffering of the victim, the disproportion between the means actually needed to inflict death and those employed, the instrumentalities employed, and the extent of the physical injury or indignities inflicted. See *Commonwealth* v. *Gould*, 380 Mass. at 686 n.16; *Commonwealth* v. *Cadwell*, 374 Mass. 308, 318 (1978). Thus, the inquiry as to whether the murder was committed with extreme atrocity or cruelty "focuse[d] both on the defendant's actions, in terms of the manner and means of inflicting death, and on the resulting effect on the victim." *Commonwealth* v. *Gould, supra* at 684, quoting from *Commonwealth* v. *Lacy*, 371 Mass. 363, 367 (1976).

In *Gould*, the court concluded that the jury should no longer be "restricted to considering only the defendant's course of action, but [should be] permitted to consider the defendant's peculiar mental state as an additional factor to be weighed in determining whether the murder was committed with extreme atrocity or cruelty." *Commonwealth* v. *Gould, supra* at 685-686. This ruling was a "clear break with the past," representing a major change in Massachusetts law. Accordingly, we consider whether *Gould* should apply only prospectively.

We look to decisions of the United States Supreme Court for guidance in determining whether a new rule affecting

the rights of criminal defendants should be applied only prospectively. We begin by noting that the Supreme Court has not distinguished between constitutional and nonconstitutional decisions in addressing the question of retroactivity. In *Linkletter* v. *Walker,* 381 U.S. 618 (1965), the Supreme Court for the first time denied retroactive effect to a decision announcing a new principle of constitutional law. In developing a doctrinal basis for its holding that the rule it announced in *Mapp* v. *Ohio,* 367 U.S. 643 (1961), applied prospectively only, the Court in *Linkletter* drew from cases "deal[ing] with the invalidity of statutes or the effect of a decision overturning long-established common-law rules." 381 U.S. at 628. The Court concluded: "[T]here seems to be no impediment — constitutional or philosophical — to the use of the same rule in the constitutional area where the exigencies of the situation require such an application." *Id.* The clear implication of the Court's reasoning is that the same principles should govern the determination of the retroactive effect of constitutional and nonconstitutional decisions.

In *Halliday* v. *United States,* 394 U.S. 831 (1969), the Court expressly adopted this reading of *Linkletter.* At issue in *Halliday* was whether the Court's holding in *McCarthy* v. *United States,* 394 U.S. 459 (1969), should apply retroactively. *Halliday, supra* at 831. In *McCarthy, supra* at 463-464, the Court held that, when a defendant's guilty plea is accepted in violation of Fed. R. Crim. P. 11, the defendant must be allowed to plead anew. *Halliday, supra.* The Court in *Halliday* stated: "In *McCarthy* we took care to note that our holding was based solely upon the application of rule 11 and not upon constitutional grounds. Nevertheless, it is appropriate to analyze the question of that decision's retroactivity in terms of the same criteria we have employed to determine whether constitutionally grounded decisions that depart from precedent should be applied retroactively. See *Linkletter* v. *Walker,* 381 U.S. 618, 622-629 (1965)." 394 U.S. at 832. See also *Chevron Oil Co.* v. *Huson,* 404 U.S. 97, 105-107, where the Court

stated that the test for determining the retroactivity of decisions announcing new constitutional rules of criminal procedure applied to civil, nonconstitutional decisions as well. We adopt the approach of the Supreme Court. In our view, it is not significant that the rule in *Gould* was not constitutionally compelled.

To decide whether *Gould* applies retroactively to trials conducted prior to the date of that decision, we employ a test which "contemplates the consideration of three criteria: '(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.' *Stovall* v. *Denno,* 388 U.S. 293, 297 (1967)." *Brown* v. *Louisiana,* 447 U.S. 323, 328 (1980) (plurality opinion of Brennan, J.). "Foremost among these factors is the purpose to be served by the new . . . rule." *Id.,* quoting *Desist* v. *United States,* 394 U.S. 244, 249 (1969). "Where the major purpose of new . . . doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule [is] given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior . . . law or accepted practice, nor severe impact on the administration of justice . . . require[s] prospective application in these circumstances." *Brown* v. *Louisiana, supra,* quoting *Williams* v. *United States,* 401 U.S. 646, 653 (1971) (plurality opinion of White, J.). Accord *Hankerson* v. *North Carolina,* 432 U.S. 233, 243 (1977); *Gosa* v. *Mayden,* 413 U.S. 665, 679 (1973) (plurality opinion of Blackmun, J.); *Ivan V.* v. *City of New York,* 407 U.S. 203, 204 (1972). Reliance on the old rule by law enforcement authorities and the impact retroactivity would have on the administration of justice are controlling "only when the purpose of the rule in question [does] not clearly favor either retroactivity or prospectivity." *Brown* v. *Louisiana, supra,* quoting from *Desist* v. *United States, supra* at 251.

The threshold question in this case is whether the major purpose of the rule announced in *Gould* was to overcome an aspect of the criminal trial that substantially impaired its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials. In making this inquiry, we bear in mind that the extent to which a practice infects the integrity of the truth-determining process of trial "is necessarily a matter of degree." *Johnson* v. *New Jersey,* 384 U.S. 719, 729 (1966). See *Brown* v. *Louisiana, supra* at 328, 329 n.6.

In *Reddick* v. *Commonwealth,* 381 Mass. 398, 400-401 (1980), we observed that the Supreme Court has given full retroactive effect to newly created constitutional rules involving the reasonable doubt standard of proof in criminal trials (*Ivan V.* v. *City of New York, supra; Hankerson* v. *North Carolina, supra*), an indigent's right to the advice of counsel at trial (*Gideon* v. *Wainwright,* 372 U.S. 335 [1963]), and an accused's right to exclude an involuntary confession from trial (*Jackson* v. *Denno,* 378 U.S. 368 [1964]). Those rules go to the heart of the fact-finding process. *Gould,* on the other hand, established only that a defendant's impaired mind may be considered as one factor among many in determining extreme atrocity or cruelty. *Gould,* 380 Mass. at 683-684 & n.14, 685-686 & n.16. *Gould* did not add a new element to the crime of murder committed with extreme atrocity or cruelty. After *Gould,* malice aforethought remains the only requisite mental element for that crime. *Commonwealth* v. *Cunneen, ante* 216, 227 (1983). Failure on the part of juries to consider mental impairment as one of the factors bearing on extreme atrocity or cruelty does not constitute so substantial an impairment of the truth-finding function as to raise serious questions about the accuracy of guilty verdicts in trials before *Gould.* Therefore, the purpose of the new rule expressed in *Gould* favors its application prospectively only.

Reliance on the old rule by law enforcement authorities and the impact retroactivity would have on the administration of justice also support the application of *Gould* prospec-

tively only.[1] Since the rule established by *Gould* was a "clear break with the past," reliance by the Commonwealth on pre-*Gould* standards was justified. In addition, although we cannot predict how many defendants convicted before *Gould* of murder in the first degree on the basis of extreme atrocity or cruelty would seek to attack their convictions on the ground that the trial judge erred in failing to instruct the jury in accordance with *Gould,* we are confident that the number of such attacks and resulting appeals and retrials would be enough to burden substantially the administration of criminal justice in the Commonwealth. We conclude that *Gould* is not retroactive. Consequently, we also conclude that *Perry* is not retroactive beyond the date of *Gould.*

We summarize as follows. The question before the court is whether the judge at Breese's trial committed error by instructing the jury that they should not consider Breese's intoxication in determining whether Breese murdered with extreme atrocity or cruelty. The answer depends on whether *Perry* is retroactive to Breese's trial, that is, whether the law as stated in *Perry* was the law at the time of Breese's trial. Since *Perry* did not announce a new rule, but was clearly foreshadowed by *Gould,* our holding in *Perry* applies retroactively to trials conducted after *Gould.* *Perry* is not retroactive to trials conducted prior to *Gould,* however, since *Gould* itself is not retroactive. Breese was tried be-

---

[1] Compare *Diaz* v. *Eli Lilly & Co.,* 364 Mass. 153, 167-168 (1973), a civil case overruling precedent by holding that either spouse may recover from a third party for loss of consortium arising from personal injury of the other spouse caused by the negligence of the third party. We did not confine our holding in *Diaz* to prospective operation only, noting that "[i]n no serious way will an existing interest be impaired or an expectation be disappointed or a reliance be defeated." *Id.* at 167. However, "[a]s a matter of sound administration and fairness" we declared that "where the claim for the physical injuries has been concluded by judgment or settlement or the running of limitations prior to the coming down of [the *Diaz*] opinion, no action for loss of consortium thereafter instituted arising from the same incident will be allowed, even if that action would not be otherwise barred by limitations." *Id.*

fore the *Gould* decision. Consequently, the rule expressed in *Perry* was not the law at his trial, and there was no error in the judge's instructions on extreme atrocity or cruelty.

*Order denying motion for a*
*new trial affirmed.*