COMMONWEALTH vs. KEVIN BRAY.

Middlesex. December 6, 1989. - May 9, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Homicide. Malice. Intent. Mental Impairment. Intoxication. Practice, Criminal*, Instructions to jury, Retroactivity of judicial holding, New trial.

Where the judge who denied a criminal defendant's motion for a new trial exercised his discretion to consider an issue which the defendant failed to raise either at trial or on direct appeal, that issue was properly before this court for review. [297-298]

Discussion of the cases decided by the United States Supreme Court establishing a framework for determining whether a new rule of decisional law affecting the rights of criminal defendants should be applied retroactively to earlier trials or should operate prospectively only. [298-301]

Although the judge's instruction to the jury at a murder trial with respect to the defendant's intoxication was inconsistent with the rule this court subsequently articulated in *Commonwealth* v. *Grey*, 399 Mass. 469 (1987), that evidence of a defendant's mental impairment is relevant and admissible on the question of malice, it was held that the *Grey* rule should not be applied retroactively to the defendant's murder conviction, which had been affirmed on direct appeal before *Grey* was decided, where *Grey* announced a new rule for the purpose of retroactivity analysis, and where that rule did not fall within either of two limited exceptions previously articulated by the United States Supreme Court in *Teague* v. *Lane*, 288 U.S. 288, 309 (1989); consequently, the defendant's motion for a new trial on the basis of the inconsistent jury instruction was properly denied. [301-303]

INDICTMENTS found and returned in the Superior Court Department on December 23, 1982.

A motion for a new trial, filed on August 10, 1987, was heard by *Robert J. Hallisey*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Brownlow M. Speer*, Committee for Public Counsel Services, for the defendant.

*Wendy Murphy*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. On May 13, 1983, a jury found the defendant guilty of murder in the second degree and of assault by means of a dangerous weapon (two counts). After sentences were imposed, the defendant appealed, and on May 1, 1985, the Appeals Court affirmed the convictions. *Commonwealth v. Bray*, 19 Mass. App. Ct. 751 (1985). Subsequently, the defendant filed a pro se motion, later amended with the assistance of counsel, for a new trial of the murder indictment. The trial judge denied the amended motion, and the defendant appealed. We granted the defendant's application for direct appellate review. We now affirm the denial of the motion for a new trial.

The defendant's motion was grounded on two claims of error in the judge's jury instructions, only one of which is asserted on appeal. The defendant contends that the judge erred by instructing the jury that evidence of a defendant's intoxication is irrelevant to the question of malice in murder. The defendant says that the judge should have instructed the jury in a manner consistent with the rule this court subsequently articulated in *Commonwealth v. Grey*, 399 Mass. 469 (1987), and that counsel's failure to raise that issue either at trial or in the first appeal constituted ineffective assistance of counsel.[1] In *Grey*, we held that evidence of a defendant's mental impairment is relevant and admissible on the question of malice, *id.* at 470-471, and in *Commonwealth v. Glass*, 401 Mass. 799, 809-810 (1988), we made clear that mental impairment includes impairment due to intoxication.

In denying the motion for a new trial, the judge addressed the defendant's challenge to the intoxication instruction, and thus, for that reason alone, the question is properly before us.

---

[1]Defense counsel in connection with the motion for a new trial and this appeal did not represent the defendant at trial or on the first appeal.

*Commonwealth* v. *McLaughlin,* 364 Mass. 211, 229-231 (1973). The judge acknowledged that, according to the law declared in *Grey* subsequent to the trial, the jury instruction was incorrect, but he concluded that the *Grey* rule should not be applied retroactively to the defendant's trial. We agree.

In *Commonwealth* v. *Breese,* 389 Mass. 540 (1983), relying on United States Supreme Court decisions, we laid out an analytical framework for determining whether decisional law should apply retroactively to earlier trials or should operate prospectively only. We stated that decisional law is usually retroactive, but, if the decision announces a new rule, it may apply prospectively only. *Id.* at 541. Whether a new rule will apply prospectively only, we said, depends on a three-part test. *Id.* That test, which originated in *Linkletter* v. *Walker,* 381 U.S. 618, 636 (1965), implicates the following criteria: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall* v. *Denno,* 388 U.S. 293, 297 (1967). *Brown* v. *Louisiana,* 447 U.S. 323, 328 (1980) (plurality opinion of Brennan, J.). *Breese, supra* at 548.

We made no suggestion in *Breese,* which was an appeal from the denial of a motion for a new trial after final judgment (collateral review), that application of the three-part retroactivity test was limited to collateral appeals. In fact, the Supreme Court had declared in *Stovall* v. *Denno, supra* at 300, that "no distinction is justified between convictions now final . . . and convictions at various stages of trial and direct review." The Court characterized such a distinction as "unsupportable." *Id.* at 300-301. See *Griffith* v. *Kentucky,* 479 U.S. 314, 329 (1987) (White, J., with whom Rehnquist, C.J., and O'Connor, J., joined, dissenting).

In cases subsequent to *Breese,* the Supreme Court has sharply distinguished between cases on direct review or in which the conviction has not become final and cases on collateral review. In *Griffith* v. *Kentucky, supra,* which involved two cases in which the defendants' convictions had not be-

come final, the Supreme Court was asked to decide whether the petitioners, one of whom had been convicted in a State court proceeding and the other of whom had been convicted in a Federal District Court, should receive the benefit of the Supreme Court's decision in *Batson* v. *Kentucky*, 476 U.S. 79 (1986). After the convictions in *Griffith*, but before the time for appellate review had expired, *Batson* overruled a portion of *Swain* v. *Alabama*, 380 U.S. 202 (1965), thereby making it much easier for a criminal defendant to establish a prima facie case of racial discrimination by a prosecutor in jury selection than it had been under *Swain*. The Court held in *Griffith* that a new criminal rule, such as the rule announced in *Batson*, applies retroactively to all cases, State and Federal, pending on direct review or in which the conviction is not yet final. *Griffith*, *supra* at 320-328. The Court reasoned that, after it has declared a new rule in a particular case, "the integrity of judicial review" requires that that rule be applied by the Supreme Court and all lower courts to all similar cases which have not gone to final judgment. *Id.* at 323. "[S]elective application of new rules," the Court concluded, "violates the principle of treating similarly situated defendants the same." *Id.* Thus, the Court moved away from the *Linkletter-Stovall* three-part test in its resolution of the retroactivity question in cases in which judgment had not become final.

Then came *Teague* v. *Lane*, 489 U.S. 288 (1989), a case involving collateral review. After an unsuccessful State court appeal, the defendant filed a habeas corpus petition in the Federal District Court. Among other things, he argued that the rule of *Taylor* v. *Louisiana*, 419 U.S. 522 (1975), holding that the Sixth Amendment to the United States Constitution requires that the jury venire be drawn from a cross section of the community, should be extended to the petit jury as well. The District Court denied the petition, and the Court of Appeals for the Seventh Circuit affirmed. The Supreme Court affirmed without addressing the Sixth Amendment question, concluding that a rule that would extend the fair cross section requirement to the petit jury should in no

event be applied retroactively to cases on collateral review. The Court did not apply the three-part test.

In *Teague, supra* at 302-305, Justice O'Connor, joined by the Chief Justice, Justice Scalia, and Justice Kennedy, discussed the inconsistent and unsatisfactory results produced by the three-part test approach. The Court also focused on the importance of the "principle of finality which is essential to the operation of our criminal justice system." *Id.* at 309. "Without finality," Justice O'Connor wrote, "the criminal law is deprived of much of its deterrent effect." *Id.* Justice O'Connor then announced the adoption, with one modification, of Justice Harlan's view of retroactivity for cases on collateral review. *Id.* at 311. That view, which had been expressed earlier by Justice Harlan in separate opinions in *Mackey* v. *United States*, 401 U.S. 667, 675 (1971), and *Desist* v. *United States*, 394 U.S. 244, 256 (1969), was that new constitutional rules should not be applied retroactively to criminal cases on collateral review unless they fall within either of two very limited exceptions. "The first exception [is] that a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' . . . The second exception [is] that a new rule should be applied retroactively if it requires the observance of 'those procedures that . . . are implicit in the concept of ordered liberty.' " *Teague, supra* at 311, quoting *Mackey, supra* at 692. The plurality in *Teague* modified the second Harlan exception by limiting its scope "to those new procedures [of fundamental fairness] without which the likelihood of an accurate conviction is seriously diminished." *Teague, supra* at 312-313.

Since *Teague* was decided, the Supreme Court has twice reiterated the retroactivity rule that that decision announced. In *Penry* v. *Lynaugh*, 109 S. Ct. 2934, 2944 (1989), a capital case, the Court stated: "Because Penry is before us on collateral review, we must determine, as a threshold matter, whether granting him the relief he seeks would create a 'new rule.' *Teague* v. *Lane*, [*supra*]. Under *Teague*, new rules will

not be applied or announced in cases on collateral review unless they fall into one of two exceptions. *Id.* at [311] . . . ." See *Butler* v. *McKellar,* 110 S. Ct. 1212 (1990).

It is appropriate for us to consider whether in *Commonwealth* v. *Grey, supra,* we announced a new criminal rule and, if so, whether that rule falls within one of the exceptions discussed in *Teague.* In *Grey, supra* at 470-471, we held that evidence of a defendant's mental impairment (including impairment due to intoxication, see *Commonwealth* v. *Glass,* 401 Mass. 799, 809-810 [1988]), is relevant to the question of malice in murder. "In general . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government . . . . To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final" (emphasis in original). *Teague* v. *Lane, supra* at 301.

For several years before *Grey* was decided, a defendant's mental illness or impairment due to intoxication by drugs or alcohol was recognized in our decisions as being relevant to a consideration of whether a murder that had been committed was committed after deliberate premeditation or with extreme atrocity or cruelty, and was, therefore, murder in the first degree. See *Commonwealth* v. *Perry,* 385 Mass. 639, 648-649 (1982); *Commonwealth* v. *Gould,* 380 Mass. 672, 680-681 (1980), and cases cited. However, our jurisprudence also contains a long line of cases that hold that a defendant's intoxication "does not relieve his actions of their malicious quality in law." *Commonwealth* v. *Huot,* 380 Mass. 403, 410 (1980), quoting *Commonwealth* v. *McGuirk,* 376 Mass. 338, 346 (1978), cert. denied, 439 U.S. 1120 (1979). See, e.g., *Commonwealth* v. *Rollins,* 354 Mass. 630, 634-635 (1968); *Commonwealth* v. *Rogers,* 351 Mass. 522, 532-533, cert. denied, 389 U.S. 991 (1967). Thus, until our decision in *Commonwealth* v. *Henson,* 394 Mass. 584 (1985), which we discuss below, our precedent at least hinted that mental impairment, whether or not due to voluntary intoxication, was relevant only to the degree of murder and not to the

proof of murder itself. In fact, even after our decision in *Henson*, we observed in *Commonwealth* v. *Dunton*, 397 Mass. 101, 103 (1986), that "[i]n no case have we recognized mental impairment as a ground for negating the element of malice in prosecutions for murder."

In *Commonwealth* v. *Henson, supra*, a case involving an indictment for assault with intent to murder, which requires proof of a specific intent to kill, *id.* at 590-591, we announced the rule that, where proof of a crime requires a specific criminal intent and there is evidence tending to show that the defendant was under the influence of alcohol or some other drug at the time of the crime, the judge, if requested, should instruct the jury that they may consider that evidence in deciding whether the prosecution has proved that specific intent beyond a reasonable doubt. *Id.* at 592-594.

A killing may be established as murder by proof of an unjustified and unexcused specific intent to kill or grievously harm the victim, but such a specific intent need not be shown. Malice in murder may also be shown by proof that, "in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act." *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987). *Henson* "dictated" for the future the rule that mental impairment is relevant to proof of crimes requiring specific intent. It did not, however, dictate that mental impairment may be relevant to proof of murder, particularly in light of the precedent in this Commonwealth, discussed above, that suggested that mental impairment was relevant to the degree of murder but "d[id] not relieve [a defendant's] actions of their malicious quality in law." *Commonwealth* v. *McGuirk, supra* at 346. Our decision in *Grey* was consistent with, and even a logical extension of, the rule announced in *Henson*, but, as Chief Justice Rehnquist wrote in *Butler* v. *McKellar, supra* at 1217, "the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether

the current decision is a 'new rule' under *Teague.*" We conclude that the rule announced in *Grey* was not "*dictated* by precedent existing at the time the defendant's conviction became final" (emphasis in original), *Teague* v. *Lane, supra* at 301, and that it was a new rule for purposes of retroactivity analysis. Therefore, we turn our attention to the question whether either of the exceptions announced in *Teague* calls for *Grey's* retroactivity.

The first exception — that a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond. the power of the criminal lawmaking authority to proscribe," *Teague, supra* at 311, quoting Justice Harlan's separate opinion in *Mackey* v. *United States,* 401 U.S. 667, 692 (1971) — clearly does not apply. The second exception is that a new rule should be applied retroactively if not to do so would "undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction." *Teague, supra* at 315. For the exception to apply, the new rule, whether constitutionally based or not, must be "central to an accurate determination of innocence or guilt" in the "basic due process" sense. *Id.* at 313. In *Teague,* the Court concluded that a new rule that would extend the requirement that jury venires be comprised of a fair cross section of the community to petit juries would not be the type of " 'bedrock procedural element' " that would be applied under the second exception. *Id.* at 315. Surely, the new rule announced in *Grey,* that a jury may consider a defendant's mental impairment as one factor bearing on malice in murder, does not fall within *Teague's* second exception. We conclude that the defendant is not entitled to the benefit of the *Grey* rule, and we affirm the denial of the defendant's motion for a new trial.

*So ordered.*